**DOCTOR'S ASSOCIATES, INC.,
Plaintiff–Appellee,**

v.

**Donald A. STUART and Martin Schwarze, Defendants–Appellants.**

**No. 1340, Docket 95–7760.**

United States Court of Appeals,
Second Circuit.

Argued April 18, 1996.

Decided June 4, 1996.

Edward W. Dunham, Wiggin & Dana, New Haven, CT, for Plaintiff-Appellee.

David Duree, Reinert & Duree, P.C., St. Louis, MO (Nicholas Wocl, Tooher, Puzzuoli & Wocl, Stamford, CT, of counsel), for Defendants-Appellants.

Before: MINER, McLAUGHLIN, and LEVAL, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Plaintiff, Doctor's Associates, Inc., is the franchisor for the popular "Subway" sandwich shops. Defendants, Donald Stuart and Martin Schwarze, two Subway franchisees, appeal from a decision and order of the United States District Court for the District of Connecticut (Peter C. Dorsey, *Chief Judge*), ordering them to arbitrate with Plaintiff, and issuing a preliminary injunction that barred them from prosecuting a lawsuit against Doctor's Associates, Inc. in Illinois state court.

## BACKGROUND

Doctor's Associates, Inc. ("DAI") is a Florida corporation with its principal place of business in Florida. Defendants own and operate two Subway sandwich shops in Illinois.

Pursuant to Federal Trade Commission disclosure regulations, *see* 16 C.F.R. § 436.1 *et seq.*, promulgated under the Federal Trade Commission Act, 15 U.S.C. § 45, DAI provides all prospective franchisees with a Uniform Franchise Offering Circular ("UFOC"). The UFOC contains copies of both a standard Subway franchise agreement and a Subway sublease agreement. Franchisees then have some time to review those documents before deciding whether to purchase a Subway franchise.

After a Subway franchise is purchased, DAI helps the franchisee to find a site for the Subway shop. If DAI approves the site, it requires each franchisee to sublease the premises from one of several real-estate leasing companies that are affiliated with DAI.

All franchise agreements (though not the subleases) contain an arbitration clause, substantially identical to the following:

Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held in Bridgeport, Connecticut, or whichever city in which the Company is then headquar-

tered,[1] and judgment upon an award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The commencement of arbitration proceedings by an aggrieved party to settle disputes arising out of or relating to this contract is a condition precedent to the commencement of legal action by either party.

The franchise agreements also contain a Connecticut choice of law clause.

As noted, the sublease agreements contain no arbitration clause; they do, however, have a "cross-default" provision, which provides, in relevant part:

> If at any time during the term of this Sublease, Sublessee shall default in the performance of any of the terms, covenants or conditions of the aforesaid Franchise Agreement ... Sublessor, at its option, may terminate this lease ... and upon such termination, Sublessee shall quit and surrender the leased premises to Sublessor. ...

Under this provision, therefore, the franchisee's breach of the franchise agreement is also a breach of the sublease; and the sublessor may bring an action to evict the franchisee/sublessee.

In 1990, Defendants opened their first Subway sandwich shop in Granite City, Illinois. Later they bought a second Subway franchise. DAI allegedly promised to approve any appropriate site Defendants found for the second franchise in Bethalto, Illinois. After locating two potential spots in Bethalto, Defendants asked DAI for approval, but were told that both sites were too close to another Subway sandwich shop located in Wood River, Illinois.

DAI then allegedly permitted another franchisee to open a Subway shop in Bethalto, at or near the spots picked by Defendants. Despite Defendants' objections, DAI made Defendants locate their second Subway store in Granite City, less than two miles from Defendants' first store. The opening of this second shop cut into the sales of Defendants' first Granite City shop.

Defendants sued DAI, its owners, and development agents in Illinois state court (the "Illinois action"), seeking a declaratory judgment that the arbitration clause in the franchise agreement is unenforceable. They also sought damages for violation of the Illinois Franchise Disclosure Act, breach of the covenant of good faith and fair dealing, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and common law fraud.

Within two weeks, DAI filed a petition, in the United States District Court for the District of Connecticut, to compel arbitration against Defendants, pursuant to 9 U.S.C. § 4. DAI also asked for a preliminary injunction, barring Defendants from prosecuting their Illinois action. The district court held a hearing on the petition to compel arbitration and the motion for a preliminary injunction.

Meanwhile, back in Illinois, the state court entered summary judgment, declaring the arbitration clause void and unenforceable.

Ignoring the state judgment, the district court in Connecticut entered an order, compelling Defendants to arbitrate with DAI. It also issued a preliminary injunction, enjoining Defendants from further prosecuting their Illinois action. The district court did not require DAI to post an injunction bond.

After the district court issued that order, this Court issued its opinion in *Doctor's Associates v. Distajo*, 66 F.3d 438 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996), a consolidation of seventeen cases involving disputes between DAI and various franchisees. In *Distajo*, we reversed orders entered in the United States District Court for the District of Connecticut compelling arbitration and issuing preliminary injunctions, and we remanded for further hearings solely to evaluate the franchisees' defenses to arbitration of fraud, alter ego, and waiver. *See id.*

---

1. Defendants entered into two franchise agreements with DAI. The first agreement provides that arbitration is only "to be held in Bridgeport, Connecticut." The second agreement contains the language as it appears here.

Defendants went back to Illinois where they filed with the Illinois Supreme Court a "Motion for Supervisory Order," collaterally attacking both the district court's decision in this case and our decision in *Distajo*. The Illinois Supreme Court summarily denied the motion.

Defendants now return to us, appealing the order that compelled arbitration and that enjoined them from prosecuting their Illinois action. They contend that: (1) the district court does not have personal jurisdiction over them, because the arbitration clause is unenforceable and service was improper; (2) venue is improper in Connecticut; (3) they are entitled to a jury trial; (4) the district court does not have the authority to enjoin the Illinois action; and (5) the district court abused its discretion in not requiring DAI to post an injunction bond.[2] We reject all the claims raised in this scattershot appeal.

### DISCUSSION

#### I. *Personal Jurisdiction*

Defendants argue that the district court lacked personal jurisdiction over them for two reasons: (A) they cannot be found to have consented to contractual personal jurisdiction if the arbitration agreement is unenforceable; and (B) DAI served its Petition to Compel Arbitration and Summons on Defendants' attorney, rather than on Defendants personally. We reject both contentions.

#### A. *Contractual Personal Jurisdiction*

■ When a party agrees "to arbitrate in [a state], where the [Federal Arbitration Act] makes such agreements specifically enforceable, [that party] must be deemed to have consented to the jurisdiction of the court that could compel the arbitration proceeding in [that state]. To hold otherwise would be to render the arbitration clause a nullity." *Victory Transp. Inc. v. Comisaria General de Abastecimientos y Transportes*, 336 F.2d 354, 363 (2d Cir.1964), *cert. denied*, 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965); *see*

also *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos*, 553 F.2d 842, 844 (2d Cir.1977); *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1317 (2d Cir.1973), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974).

Defendants argue, however, that they cannot be deemed to have consented to personal jurisdiction if the arbitration clause is unenforceable. And, they assert the arbitration clause is unenforceable because: (1) DAI fraudulently induced them into the arbitration agreement; (2) the arbitration agreement is unconscionable; and (3) DAI waived its right to arbitrate.

#### (1) *Fraudulent Inducement*

■ Defendants contend that DAI fraudulently induced them into executing the franchise agreements by falsely representing that arbitration was a condition precedent to the institution of legal action by *either* party to the franchise agreement. DAI, however, had reserved to itself the right to bring summary eviction proceedings against its franchisees through DAI's affiliated leasing companies. Defendants also claim that DAI failed to mention that its standard operating procedure was to bring summary eviction actions against franchisees for alleged breaches of the franchise agreement. The district court found this defense insufficient as a matter of law, and we agree.

In *Distajo*, we held that it is the district court's responsibility—not the arbitrators'—to decide whether an arbitration clause was fraudulently induced. *See Distajo*, 66 F.3d at 457.

■ "The essential elements of an action in fraud ... are: (1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." *Miller v. Appleby*, 183 Conn. 51, 54–55, 438 A.2d 811 (1981) (citation omitted); *see also Clark v. Haggard*, 141 Conn. 668, 672–73, 109

---

2. On this appeal, Defendants raise several other issues, which they concede this Court flatly rejected in *Distajo*. Defendants say they raised these issues solely to preserve them in the event the Supreme Court granted certiorari in *Distajo*. In any event, the Supreme Court has now denied certiorari. *See* —— U.S. ——, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996).

A.2d 358 (1954); 12 Samuel Williston, *The Law of Contracts* § 1487, at 324–27 (Walter H.E. Jaeger ed., 3d ed.1970).

Defendants have utterly failed to allege, much less prove, sufficient facts indicating that they were defrauded into agreeing to arbitrate. Before purchasing their franchises, Defendants received a Uniform Franchise Offering Circular ("UFOC") from DAI. The UFOC included copies of both the standard franchise agreement and the sublease. Although the franchise agreement contains an arbitration clause, the sublease does not; rather, it provides that if the sublessee breaches the franchise agreement, the sublessor may terminate the sublease and bring an eviction action. These clauses were not camouflaged, and Defendants cannot now complain that they failed to read or inquire into the meaning of those documents. *Cf. Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 288 (9th Cir.1988) ("Whether [plaintiffs] read the agreement but did not notice the arbitration clause, or chose not to read the agreement at all, their reliance on [defendant's] alleged misrepresentation was unreasonable in light of the clear and explicit language of the contract."); *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir.1984) (parties "cannot use their failure to inquire about the ramifications of [an arbitration] clause to avoid the consequences of agreed-to arbitration").

Even if we were satisfied that DAI made false representations to these franchisees, Defendants have failed to show that they relied on those statements to their injury. No Subway leasing company has ever sued Defendants, and DAI has demanded that Defendants' claims be sent to arbitration. Thus, Defendants' assertion that DAI concealed an intention *not* to arbitrate is absurd on its face, since arbitration is precisely what DAI is attempting to compel in this proceeding. We therefore find that the district court properly held, as a matter of law, that DAI did not fraudulently induce Defendants into signing the agreement to arbitrate.

### (2) *Unconscionability*

■ Defendants next claim that the arbitration clause, as enforced by DAI, is unconscionable, because the franchise agreement does not disclose that: (1) the American Arbitration Association ("AAA") charges as much as $5,000 for filing and administration fees; (2) the high cost of arbitrating in Connecticut—including travel and lodging expenses for the franchisee and his or her attorney—necessitates the franchisee to win the arbitration to break even financially; (3) the franchisee must pay half of the hourly charges of the arbitrators, who are often attorneys with high-priced rates; (4) the AAA relies on DAI to provide it with repeat business and thus has a bias in favor of DAI; and (5) DAI primarily resolves its disputes with the franchisees by filing, or threatening to file, eviction lawsuits in the name of its affiliated leasing companies, instead of arbitrating as represented by the franchise agreements. We are unpersuaded by Defendants' claims.

The " 'purpose of the unconscionability doctrine is to prevent unfair surprise and oppression.' " *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 249 (2d Cir.) (quoting *Pierson*, 742 F.2d at 339), *cert. dismissed*, 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991); *see also Restatement (Second) of Contracts* §§ 208, 211. We find that the arbitration clause in the DAI franchise agreement did not ambush these Defendants.

First, Defendants were aware, based on the language of the arbitration agreement, that they would have to travel to either Florida or Connecticut if an arbitrable dispute arose. *See infra* pt. II. Such forum selection clauses are not unconscionable. *See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989) ("[T]he federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."); *see also Snyder v. Smith*, 736 F.2d 409, 419 (7th Cir.), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). Moreover, the arbitration clause itself provides that:

[e]ach party will be responsible for their [sic] own costs in conjunction with the arbitration proceeding. If Franchisee commences action in any court prior to an

arbitrator's final decision on the controversy or claim, Franchisee will be responsible for all expenses incurred by both [DAI] and Franchisee in the Arbitration and the Court proceedings.

Thus, Defendants were on notice that they were at least liable for their own costs in the arbitration proceedings. Certainly they could have inquired about the typical fees charged by the AAA and its arbitrators. *See generally Volt Info. Sciences,* 489 U.S. at 479, 109 S.Ct. at 1256 ("Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.").

In addition, Defendants have failed to present any credible evidence indicating bias on the part of the AAA—or its arbitrators— in favor of DAI in this case, particularly because Defendants' claims have not yet gone to arbitration. *See* 9 U.S.C. § 10(a); *see also Sheet Metal Workers Int'l Ass'n v. Kinney Air Conditioning Co.,* 756 F.2d 742, 746 (9th Cir.1985) ("The party alleging evident partiality must establish specific facts which indicate improper motives on the part of the [arbitrators].");*In re Andros Compania Maritima, S.A.,* 579 F.2d 691, 700–01 (2d Cir.1978).

And, finally, we reject Defendants' claim that the arbitration clause is unconscionable because it does not disclose that DAI primarily resolves its disputes with franchisees, not by actual arbitration, but by filing, or threatening to file, eviction lawsuits in the name of its affiliated leasing companies. As noted previously, no Subway leasing company has ever brought or threatened to bring eviction proceedings against these Defendants; and, in fact, DAI is attempting to compel arbitration through this federal action. Thus, we find that the arbitration clause is not unconscionable.

### (3) *Waiver*

Defendants assert that DAI acted inconsistently with the right to arbitrate, by customarily filing or threatening to file eviction lawsuits, in the name of its alter ego leasing companies, against its franchisees, instead of submitting disputes to arbitration. On the facts of this particular case, we disagree.

■ The question whether a party's conduct amounts to waiver of arbitration is purely a legal one, subject to *de novo* review. *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 25 (2d Cir.1995). The factual determinations upon which to base the waiver determination, however, will not be reversed unless clearly erroneous. *Id.*

■ "We recognize that there are strong federal policies in favor of arbitration and that a waiver of arbitration ' "is not to be lightly inferred." ' " *Com–Tech Assocs. v. Computer Assocs. Int'l, Inc.,* 938 F.2d 1574, 1576 (2d Cir.1991) (quoting *Rush v. Oppenheimer & Co.,* 779 F.2d 885, 887 (2d Cir.1985) (quoting *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir.1968))); *see also Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26, 107 S.Ct. 2332, 2336–37, 96 L.Ed.2d 185 (1987). This preference for arbitration "ha[s] led to its corollary that any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *Leadertex,* 67 F.3d at 25 (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)).

■ Nonetheless, a court may refuse to enforce an arbitration agreement where, for example, "the alleged defaulting party has acted inconsistently with the right to arbitrate." *St. Mary's Medical Ctr. v. Disco Aluminum Prods. Co.,* 969 F.2d 585, 588 (7th Cir.1992). The waiver determination must be based on the circumstances and context of the particular case, "with a healthy regard for the policy of promoting arbitration." *Leadertex,* 67 F.3d at 25; *see also St. Mary's Medical Ctr.,* 969 F.2d at 588.

In *Distajo,* DAI franchisees raised the same waiver defense as here. In that case, we held:

> that the issue of DAI's waiver of arbitration is for the district court to resolve on remand [in the first instance]. The factual contentions to be resolved include whether the leasing companies were mere alter egos of DAI. If DAI was responsible for

the eviction proceedings, it must then be determined whether prosecution of those eviction actions constituted litigation of "substantial issues going to the merits." This inquiry will require a determination of whether, in fact, *the particular eviction proceedings* were based on the cross-default provisions of the subleases.

*Distajo,* 66 F.3d at 456–57 (citation and footnote omitted) (emphasis added). In so holding, however, we did not "reach the question of *how* the district court should resolve this issue" on remand. *Id.* at 456 n. 13.

■ Although DAI concedes that it controls the decisions to file eviction actions in general, it has never brought, nor has it threatened to bring, eviction proceedings against these Defendants. Where, as here, DAI has not instituted any "particular eviction proceedings" against the franchisee/ sublessee, DAI obviously cannot be deemed to have waived its right to arbitrate with that franchisee. *See id.* at 457. As the district court held, Defendants cannot rely on the fact that DAI has brought eviction proceedings against other franchisees as a basis for DAI's waiver of its contractual right to arbitrate in this case. *See Doctor's Assocs. v. Stuart,* No. 3:95CV01065, slip op. at 3–4 (D.Conn. July 27, 1995); *see also Leadertex,* 67 F.3d at 25 ("waiver is decided in the context of the case").

### (4) *Hearing*

Defendants add a contention that, at the very least, the district court was required to conduct a hearing on the personal jurisdiction issue. *See* Fed.R.Civ.P. 12(d); *AAA-CON Auto Transp., Inc. v. Klee,* 356 F.Supp. 319, 321 (S.D.N.Y.1973). Here, the district court did hold a hearing on whether the arbitration agreement was enforceable, and it concluded that it was. Although the court did not specifically label the hearing as one to ascertain personal jurisdiction, its finding that the arbitration agreement was valid clearly indicates the nature of the hearing.

Having thus rejected all Defendants' defenses to the arbitration clause, we find that the district court properly exercised personal jurisdiction over Defendants. *See Victory Transp.,* 336 F.2d at 363.

### B. *Service of Process*

■ Defendants further cavil that their attorney, rather than Defendants themselves, was served with the papers to compel arbitration. The arbitration clause here provides that "[a]ny controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by arbitration *in accordance with the Commercial Arbitration Rules of the American Arbitration Association.*" (Emphasis added). Because the arbitration clause specifically incorporates the AAA's Commercial Arbitration Rules, we look to those rules to determine the method for service of process to which the parties have agreed. *See, e.g.,* Martin Domke, *Domke on Commercial Arbitration* § 14.02, at 220 (Gabriel M. Wilner ed., 1995).

AAA Rule 40, entitled "Serving of Notice," provides, in relevant part:

Each party shall be deemed to have consented that any papers, notices, or process necessary or proper for the initiation or continuation of an arbitration under these rules; *for any court action in connection therewith;* ... may be served on a party by mail addressed to the party *or its representative* at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard thereto has been granted to the party.

The AAA and the parties may also use facsimile transmission ... or other written forms of electronic communication to give the notices required by these rules.

AAA Commercial Arbitration Rule 40 (emphasis added).

Here, Defendants' attorney, David Duree, is unquestionably their representative, and there is no dispute that Duree received DAI's papers in accordance with applicable AAA rules. Thus, service of process was proper. *See Victory Transp.,* 336 F.2d at 364; *Lawn v. Franklin,* 328 F.Supp. 791, 794 (S.D.N.Y.1971) (Gurfein, *J.*); *see also Lecopulos,* 553 F.2d at 845.

## II. *Venue*

Defendants also assert that the district court erred by holding Connecticut a proper venue for this action. We find this argument bewildering.

■ A party who agrees to arbitrate in a particular jurisdiction consents not only to personal jurisdiction but also to venue of the courts within that jurisdiction. *See, e.g., Farr & Co. v. Cia. Intercontinental De Navegacion De Cuba, S.A.,* 243 F.2d 342, 346 (2d Cir.1957). Because Defendants consented to personal jurisdiction in the District of Connecticut, *see supra* pt. I, they also consented to venue there.

■ Defendants, however, attempt to cozen us with a semantic sleight-of-hand. In its Petition to Compel Arbitration, DAI averred that: "[v]enue is proper under 28 U.S.C. § 1391(a)(3) because this Court has personal jurisdiction over the defendants, and the District of Connecticut is the only judicial district in which this action may be brought under 9 U.S.C. § 4." Plaintiff's Petition to Compel Arbitration ¶ 5. Pursuant to the arbitration clause in one of Defendants' franchise agreements, however, arbitration may be commenced "in Bridgeport, Connecticut, *or* whichever city in which the company is then headquartered." (Emphasis added); *see supra* note 1 and accompanying text. DAI is now headquartered in Fort Lauderdale, Florida. Thus, pursuant to the language of the arbitration clause, Defendants claim:

> [t]hat means arbitration is required to take place in either Fort Lauderdale, Florida or Bridgeport, Connecticut. Accordingly, venue does not lie in Connecticut under 28 U.S.C. § 1391(a)(3) because there is another district in which the action may otherwise be brought.

Defendants have argued that venue lies in the Southern District of Florida, not Connecticut. Defendants would be estopped to make the same argument about venue in the Southern District of Florida. Accordingly, this Court has no choice but to transfer this case to the Southern District of Florida.

Appellants' Brief at 12 (citation omitted).

This argument borders on the absurd. Section 1391(a) provides:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, *if there is no district in which the action may otherwise be brought.*

28 U.S.C. § 1391(a) (emphasis added). The phrase "if there is no district in which the action may otherwise be brought" indicates that venue may be based on § 1391(a)(3) "only if neither [§ 1391(a)(1) or (2) ] can be satisfied." 1A *Moore's Federal Practice* ¶ 0.342[3], at 4083. It does *not* mean that venue is improper in one district merely because there is another equally appropriate district in which the defendants are subject to personal jurisdiction at the time the action is commenced. *See id.* Pursuant to the arbitration agreement, both Florida and Connecticut are proper venues, and thus Defendants "consented to the jurisdiction of the district court in [Connecticut], where the petition [to compel arbitration] was filed." *Farr & Co.,* 243 F.2d at 346.

## III. *Jury Trial Demand*

■ Defendants assert that they are entitled to a jury trial on their arbitration defenses of fraud and waiver. A party resisting arbitration "cannot obtain a jury trial merely by demanding one;" rather, he bears " 'the burden of showing that he is entitled to a jury trial under § 4 of the [FAA].' " *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 961 F.2d 1148, 1154 (5th Cir. 1992) (citation omitted), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993). "[T]o warrant a trial under 9 U.S.C. § 4, the

issue raised must be 'genuine.'" *Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.,* 663 F.2d 4, 7 (2d Cir.1981) (quoting *Almacenes Fernandez S.A. v. Golodetz,* 148 F.2d 625, 628 (2d Cir.1945)).

■ To establish a genuine issue entitling a party to a jury trial, "'an unequivocal denial that the agreement [to arbitrate] had been made [is] needed, and some evidence should [be] produced to substantiate the denial.'" *Id.* (quoting *Almacenes Fernandez,* 148 F.2d at 628); *see also Interocean Shipping Co. v. National Shipping & Trading Corp.,* 462 F.2d 673, 677 (2d Cir.1972); *Dillard,* 961 F.2d at 1154 (party demanding jury trial "must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true," and must also "produce at least some evidence to substantiate his factual allegations").

■ In *Distajo,* the franchisees also made a demand for a jury trial on their arbitration defense issues. We noted that:

[b]y so holding [that the issues of waiver and fraudulent misrepresentation are matters for the district court, not the arbitrators], we do not purport to reach the question of *how* the district court should resolve this issue. The defendants' jury demands should be considered by the district court in the first instance.

*Distajo,* 66 F.3d at 456 n. 13; *see also id.* at 457 n. 15. As discussed in Part I, *supra,* Defendants have totally failed to establish that there are genuine issues concerning their defenses of fraud and waiver. We conclude, therefore, that the district court properly found that there was no genuine issue for trial.

IV. *Authority to Enjoin Illinois suit*

Defendants next argue that the district court erred by enjoining Defendants from prosecuting their Illinois action because: (1) the district court did not have personal jurisdiction over them; and (2) the scope of the preliminary injunction is overly broad in that it prevents Defendants from suing not only DAI, but also DAI's agents and owners. We reject these claims.

As discussed in Part I, *supra,* the district court did have personal jurisdiction over Defendants.

■ In regard to the scope of the injunction, Defendants' counsel raised this precise argument before the Seventh Circuit in *Kroll v. Doctor's Assocs.,* 3 F.3d 1167 (7th Cir. 1993), a case which, now at a later stage in its proceedings, was heard in tandem with the instant appeal. In *Kroll,* a franchisee, represented by Defendants' attorney, David Duree, sued DAI, its agents, and owners in Wisconsin state court. DAI removed the case to federal court, and moved to dismiss or stay the Wisconsin action pending arbitration in accordance with the franchise agreement. The district court stayed the Wisconsin action, and the Seventh Circuit affirmed.

In so holding, the Court explained:

Kroll also argues that his [Wisconsin] lawsuit should, at the very least, be allowed to proceed against the individual [agents and owners of DAI] since he "did not agree to arbitrate anything with [those agents and owners]." We have previously observed, however, that section three of the Federal Arbitration Act "plainly requires that a district court stay litigation where *issues* presented in the litigation are the subject of an arbitration agreement." We went on to hold that a stay must be granted, even in favor of persons that are not party to the agreement containing the arbitration clause, if the litigation is an attempt "to evade the agreed-upon resolution of their disputes in the arbitration forum by introducing the identical controversy against a party who is ultimately liable for the arbitrating party's acts." ...

Kroll's suit against [DAI's owners and agents] has no plausible purpose other than to evade its duty to arbitrate its disputes with DAI. Accordingly, a stay must issue in favor of [those agents and owners].

*Kroll,* 3 F.3d at 1171 (citations omitted); *see also Mosca v. Doctors Assocs.,* 852 F.Supp. 152, 155 (E.D.N.Y.1993) ("This court will not permit Plaintiffs to avoid arbitration simply by naming individual agents of the party to

the arbitration clause and suing them in their individual capacity.").

We likewise find that Defendants' Illinois action against DAI and its owners and agents is a bald attempt to evade its duty to arbitrate with DAI. Thus, the district court properly enjoined Defendants' Illinois action. *See, e.g., ACLI Gov't Sec., Inc. v. Rhoades,* 963 F.2d 530, 532–33 (2d Cir.1992).

## V. *Bond Requirement*

Finally, Defendants are distressed that the district court did not require a preliminary injunction bond. Again, we disagree.

Federal Rule of Civil Procedure 65(c) provides that "[n]o ... preliminary injunction shall issue except upon the giving of security by the applicant, *in such sum as the court deems proper ....*" Fed.R.Civ.P. 65(c) (emphasis added). The phrase "in such sum as the court deems proper":

> indicates that the District Court is vested with wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm, or where the injunctive order was issued "to aid and preserve the court's jurisdiction over the subject matter involved."

*Ferguson v. Tabah,* 288 F.2d 665, 675 (2d Cir.1961) (citations omitted); *see also Clarkson Co. v. Shaheen,* 544 F.2d 624, 632 (2d Cir.1976) ("[B]ecause, under Fed.R.Civ.P. 65[c], the amount of any bond to be given upon the issuance of a preliminary injunction rests within the sound discretion of the trial court, the district court may dispense with the filing of a bond." (citations omitted)).

Here, Defendants have not shown that they will likely suffer harm absent the posting of a bond by DAI. Moreover, the purpose of the injunction here was merely to preserve the district court's jurisdiction over the action to compel arbitration. Thus, we find that the district court did not abuse its discretion in dispensing with the bond.

## CONCLUSION

We have fully considered all other claims advanced on this appeal, and find them una-vailing. For the foregoing reasons, the decision of the district court is AFFIRMED.