**DOCTOR'S ASSOCIATES, INC.,**
Plaintiff–Appellee,

v.

**Sharlene JABUSH, The Estate of Charles Nadel, Saviour Mercieca, Maryann Mercieca, Raymond Montclar, Than Myers, William J. O'Brien, Constance M. O'Brien, William T. Holland, Martin Pena, Brian Spears, and Lisa Spears,** Defendants–Appellants.

Nos. 1344, 1696, Dockets 95–7694(L), 95–7764(CON).

United States Court of Appeals, Second Circuit.

Argued April 18, 1996.

Decided July 16, 1996.

Edward W. Dunham, Wiggin & Dana, New Haven, CT, for Plaintiff–Appellee.

David Duree, Reinert & Duree, P.C., St. Louis, MO (Nicholas Wocl, Tooher, Puzzuoli & Wocl, Stamford, CT, of counsel), for Defendants–Appellants.

Before: MINER, McLAUGHLIN, and LEVAL, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Plaintiff is the franchisor of "Subway" sandwich shops. Defendants, Subway franchisees, appeal from a judgment of the United States District Court for the District of Connecticut (Peter C. Dorsey, *Chief Judge*), ordering them to arbitrate with Plaintiff, and issuing a preliminary injunction barring them from prosecuting any pending or proposed lawsuits against Plaintiff.

## BACKGROUND

Doctor's Associates, Inc. ("DAI") is a Florida corporation with its principal place of business in Florida. Defendants are present or former Subway franchisees who own or did own franchises in various states. Subway sandwich shop franchisees must purchase their franchise from DAI and must lease their store premises from a DAI-affiliated leasing company.

DAI provides all prospective franchisees with a Uniform Franchise Offering Circular, which contains copies of both a standard Subway franchise agreement and a Subway sublease agreement. *See* 16 C.F.R. § 436.1 *et seq.*. Franchisees have time to review those documents before deciding whether to purchase a Subway franchise.

After a Subway franchise is purchased, DAI helps the franchisee find a site for the Subway shop. If DAI approves the site, one of DAI's affiliated real-estate leasing companies takes a lease on the site and then requires the franchisee to sublease the premises.

All franchise agreements (though not the subleases) contain an arbitration clause, substantially identical to the following:

> Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held in Bridgeport, Connecticut, or whichever city in which the Company is then headquartered, and judgement upon an award rendered by

the Arbitrator(s) may be entered in any court having jurisdiction thereof. The commencement of arbitration proceedings by an aggrieved party to settle disputes arising out of or relating to this contract is a condition precedent to the commencement of legal action by either party. Each party will be responsible for their [sic] own costs in conjunction with the arbitration proceeding. If Franchisee commences action in any court prior to an arbitrator's final decision on the controversy or claim, then the Franchisee will be responsible for all expenses incurred by the Company and Franchisee in the arbitration and the court proceedings.

As noted, the sublease agreements do not contain an arbitration clause; they do, however, have a "cross-default" provision, which provides, in relevant part:

> If at any time during the term of this Sublease, Sublessee shall default in the performance of any of the terms, covenants or conditions of the aforesaid Franchise Agreement ... Sublessor, at its option, may terminate this lease ... and upon such termination, Sublessee shall quit and surrender the leased premises to Sublessor....

Under this provision, a franchisee's breach of the franchise agreement is also a breach of the sublease; and the sublessor may bring an action to evict the franchisee/sublessee.

In 1993, DAI and certain of its leasing companies sued Defendants Brian and Lisa Spears in Maryland state court for alleged breaches of the Spearses' sublease agreements. The Spearses, in turn, sued DAI, its owners, and its agents in Maryland state court, alleging breach of the franchise agreements, fraud, statutory violations concerning their franchises, and tortious interference with a purchase and sale agreement. DAI responded by filing a demand for arbitration with the American Arbitration Association ("AAA"). The Spearses refused to comply with the arbitration demand.

As to the other Defendants in this action, DAI filed separate demands for arbitration with the AAA, alleging breaches of their franchise agreements. DAI asserted a myriad of reasons for the alleged breaches, in-cluding the franchisees' failure to maintain compliance standards as outlined in the Subway Operations Manual. These Defendants also refused to comply with the demands for arbitration. Instead, contending that the arbitration clause was unenforceable, they threatened to file—but did not actually file—state and/or federal lawsuits against DAI, its owners, and development agents. Neither DAI nor its affiliated leasing companies filed any eviction actions against these Defendants for alleged breaches of the subleases.

Between February and April 1995, DAI brought six separate actions to compel arbitration against Defendants in the United States District Court for the District of Connecticut. DAI also sought a preliminary injunction, enjoining Defendants from prosecuting their existing or potential lawsuits against DAI. The district court consolidated these six actions.

The court granted DAI's petitions to compel arbitration, and entered a preliminary injunction barring Defendants from prosecuting any pending or proposed actions against DAI. *Doctor's Assocs. v. Jabush*, 3:95CV00695 (PCD), slip op. at 4 (D. Conn. June 21, 1995).

Defendants now appeal, arguing that: (1) the district court did not have subject matter jurisdiction over the petitions to compel arbitration; (2) the defense of fraud is not an arbitrable issue; (3) the arbitration clause is unconscionable; (4) DAI waived its right to arbitrate; (5) Defendants are entitled to a jury trial; (6) the preliminary injunctions imposed by the district court should be vacated; and (7) the district court abused its discretion in failing to require DAI to post an injunction bond.

## DISCUSSION

Defendants' attorney, as representative for numerous Subway franchisees, and DAI are by no means strangers to this Court. Both participated in *Doctor's Assocs. v. Distajo*, 66 F.3d 438 (2d Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996), and *Doctor's Assocs. v. Stuart*, 85 F.3d 975 (2d Cir.1996), decisions which were handed

down subsequent to the district court's orders in this case.

In *Distajo*, a consolidation of seventeen cases involving disputes between DAI and various franchisees, we reversed district court orders compelling arbitration and issuing preliminary injunctions, and remanded for further hearings on the franchisees' defenses of fraud, alter ego, and waiver. *See Distajo*, 66 F.3d at 458.

*Stuart* was yet another case involving conflicts between DAI and other franchisees. There, we affirmed district court orders compelling arbitration and issuing preliminary injunctions barring parallel state litigation in Illinois. *See Stuart*, 85 F.3d at 978–79.

Many of the issues raised and addressed in *Distajo* and *Stuart* overlap the issues advanced here. Familiarity with those two decisions is therefore assumed.

## I. *Subject Matter Jurisdiction*

Defendants argue that the district court lacks subject matter jurisdiction over DAI's petitions to compel arbitration. That issue was fully addressed and rejected in *Distajo*. *See Distajo*, 66 F.3d at 444–46. There is no need to revisit that claim here.

## II. *Defense of Fraud*

 Defendants contend that DAI fraudulently induced the franchise agreements, in general, and the arbitration clause, in particular. Specifically, they claim that DAI falsely represented that arbitration was a condition precedent to the institution of legal action by *either* party to the franchise agreement; and yet DAI, through its affiliated leasing companies, reserved the right to bring summary eviction proceedings against its franchisees for breaches of the franchise agreement.

The district court declined to reach this issue, finding that "[t]he claim that the franchise agreement, and the arbitration clause, are void as procured by fraud can be arbitrated." *Jabush*, No. 3:95CV00695 (PCD), slip op. at 4.

As the parties concede, however, we subsequently decided in *Distajo* that it is the district court's responsibility—not the arbitrators'—to determine the issue of fraud in the inducement of the arbitration clause. *See Distajo*, 66 F.3d at 457. Thus, the issue of fraudulent inducement, as it relates to all Defendants in this action, is remanded to the district court for further consideration in light of *Distajo*. *See id.*

## III. *Unconscionability*

Defendants claim that the arbitration clause is unconscionable because the franchise agreement does not disclose that: (1) the AAA charges as much as $5,000 for filing and administration fees; (2) the high cost of arbitrating in Connecticut—including travel and lodging expenses for the franchisee and his or her attorney—requires the franchisee to win the arbitration to break even financially; (3) the franchisee must pay half of the hourly charges of the arbitrators, who are often attorneys with high-priced rates; (4) the AAA relies on DAI to provide it with repeat business and thus has a bias in favor of DAI; and (5) DAI primarily resolves its disputes with the franchisees by having its affiliated leasing companies file, or threaten to file, eviction lawsuits instead of arbitrating as represented by the franchise agreements.

Defendants' counsel raised these precise arguments in *Stuart*, 85 F.3d 975, which was argued in tandem with the instant appeal. As to arguments (1)-(4) above, we reject the assertion of unconscionability for the reasons stated in *Stuart*. *See id.* at 980–81.

As to the Spears defendants, however, argument (5) requires additional discussion. The *Stuart* defendants, like all Defendants in this case except the Spearses, had never been party to a Subway eviction proceeding. As to those defendants, we stated in *Stuart*:

> [W]e reject Defendants' claim that the arbitration clause is unconscionable because it does not disclose that DAI primarily resolves its disputes with franchisees, not by actual arbitration, but by filing, or threatening to file, eviction lawsuits in the name of its affiliated leasing companies. As noted previously, no Subway leasing company has ever brought or threatened to bring eviction proceedings against these Defendants; and, in fact, DAI is attempt-

ing to compel arbitration through this federal action. Thus, we find that the arbitration clause is not unconscionable.

*Id.* at 981.

The Spearses, in contrast, have been sued by DAI and its leasing companies for alleged breaches of their sublease. Despite this distinguishing feature, we find that the arbitration clause, as it applies to the Spearses, is not unconscionable.

■ "Originating in Equity as a form of relief against the harshness of penal bonds, th[e] doctrine [of unconscionability] has been employed by courts to deny enforcement to harsh and unreasonable contract terms." *Leasing Serv. Corp. v. Justice,* 673 F.2d 70, 71 (2d Cir.1982) (footnote omitted). An unconscionable bargain is one which " 'no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other.' " *Hume v. United States,* 132 U.S. 406, 411, 10 S.Ct. 134, 136, 33 L.Ed. 393 (1889) (quoting *Earl of Chesterfield v. Janssen,* 2 Ves. Sen. 125, 155, 28 Eng. Rep. 82, 100 (1750)); *see also Geldermann & Co. v. Lane Processing, Inc.,* 527 F.2d 571, 575 (8th Cir.1975).

■ The doctrine was forged to "protect[ ] against unfair bargains and unfair bargaining practices. Unconscionability is determined by reference to the relative benefit of the bargain to the parties *at the time of its making,* the nature of the methods employed in negotiating it, and the relative bargaining power of the parties." *United States v. Bedford Assocs.,* 657 F.2d 1300, 1312–13 (2d Cir. 1981) (emphasis added) (citations omitted), *cert. denied,* 456 U.S. 914, 102 S.Ct. 1767, 72 L.Ed.2d 173 (1982).

■ We find that the arbitration clause in the Spearses' franchise agreement, even when coupled with the cross-default provision in their sublease, is not unconscionable. Before purchasing their Subway franchise, the Spearses unquestionably received a Uniform Franchise Offering Circular from DAI. This circular included both a standard franchise agreement, which contained the arbitration clause, and a standard sublease, which contained the cross-default provision but no arbitration clause. As noted above, the cross-default provision provides that if the "Sublessee shall default in the performance of any of the terms, covenants or conditions of the aforesaid Franchise Agreement . . . Sublessor, at its option, may terminate this lease." Thus, by its plain terms, a breach of the franchise agreement constitutes a breach of the sublease.

These arbitration and cross-default provisions certainly did not " 'unfair[ly] surprise and oppress[ ]' " the Spearses. *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London),* 923 F.2d 245, 249 (2d Cir.) (quoting *Pierson v. Dean, Witter, Reynolds, Inc.,* 742 F.2d 334, 339 (7th Cir.1984)), *cert. dismissed,* 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991). As purchasers of a Subway sandwich franchise, the Spearses "[were] not vulnerable consumers or helpless workers. They [were] business people who bought a franchise." *The Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.,* 970 F.2d 273, 281 (7th Cir.1992). We simply cannot conclude that, in deciding to purchase their franchise, the Spearses were "forced to swallow unpalatable terms." *Id.*

Thus, we find that the arbitration clause, as it relates to all Defendants to this action, is not unconscionable.

## IV. *Waiver*

■ Defendants assert that DAI acted inconsistently with the right to arbitrate by customarily filing or threatening to file eviction lawsuits against its franchisees, in the name of its alter ego leasing companies, instead of submitting disputes to arbitration. This conduct, they maintain, constitutes a waiver of the right to arbitrate the controversy.

In *Distajo,* DAI franchisees raised the same waiver defense. There we held:

the issue of DAI's waiver of arbitration is for the district court to resolve on remand [in the first instance]. The factual contentions to be resolved include whether the leasing companies were mere alter egos of DAI. If DAI was responsible for the eviction proceedings, it must then be determined whether prosecution of those

eviction actions constituted litigation of "substantial issues going to the merits." This inquiry will require a determination of whether, in fact, *the particular eviction proceedings* were based on the cross-default provisions of the subleases.

*Distajo,* 66 F.3d at 456–57 (citation and footnote omitted) (emphasis added).

We subsequently added in *Stuart,* however, that "[w]here... DAI ·has ·not instituted any 'particular eviction proceedings' against the franchisee/sublessee, DAI obviously cannot be deemed to have waived its right to arbitrate with that franchisee." ·*Stuart,* 85 F.3d at 982 (quoting *Distajo,* 66 F.3d at 457).

In this case, DAI and some of its leasing companies have sued Defendants Brian and Lisa Spears for alleged breaches of the Subway sublease agreement. Thus, as to the Spearses, the issue whether DAI has waived its right to· arbitrate is remanded to the district court for further findings consistent with *Distajo. See Distajo,* 66 F.3d at 453–57.

■ As to the remaining Defendants, however, DAI has never brought, nor has it threatened to bring, eviction proceedings against·them. Thus, as to those particular Defendants, we reject their waiver defense for the reasons stated in *Stuart. See Stuart,* 85 F.3d at 981–82.

## V. *Jury Trial Demand*

Defendants assert that they are entitled to a jury trial on their arbitration defenses of fraud and waiver. As we stated in *Stuart,* 85 F.3d at 983–84, a party resisting arbitration "cannot obtain a jury trial merely by demanding one;" rather, he bears " 'the burden of showing that he is entitled to a jury trial under § 4 of the [FAA].' " *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 961 F.2d 1148, 1154 (5th Cir.1992) (quoting *Bhatia v. Johnston,* 818 F.2d 418, 422 (5th Cir. 1987)), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993). "[T]o warrant a trial under 9 U.S.C. § 4, the issue raised must be 'genuine.' " *Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.,* 663 F.2d 4, 7 (2d Cir.1981) (quoting *Almacenes Fernandez S.A. v. Golodetz,* 148 F.2d 625, 628 (2d Cir.1945)).

■ To establish a genuine issue entitling a party to a jury trial, " 'an unequivocal denial that the agreement [to arbitrate] had been made [is] needed, and some evidence should [be] produced to substantiate the denial.' " *Id.* (quoting *Almacenes Fernandez,* 148 F.2d at 628); *see also Interocean Shipping Co. v. National Shipping & Trading Corp.,* 462 F.2d. 673, 677 (2d Cir.1972); *Dillard,* 961 F.2d at 1154 (party demanding jury trial "must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true," and must also "produce at least some evidence to substantiate his factual allegations").

In *Distajo,* the franchisees also made a demand for a jury trial on their arbitration defenses. We noted that:

[By holding that the issues of waiver and fraudulent misrepresentation are matters for the district court, not the arbitrators], we do not purport to reach the question of *how* the district court should resolve this issue. The defendants' jury demands should be considered by the district court in the first instance.

*Distajo,* 66 F.3d at 456 n. 13; *see also id.* at 457 n. 15.

■ As indicated above, the issue of fraudulent inducement, as it relates to all Defendants in this action, is remanded to the district court for further consideration in light of *Distajo. See supra* pt. II. And, as to the Spearses only, the issue of waiver is also remanded to the district court to be evaluated under *Distajo. See supra* pt. IV. Thus, as to those issues remanded, it is appropriate that the district court be given the first opportunity to consider the Defendants' jury demands. *See Distajo,* 66 F.3d at 456 n. 13, 457 n. 15.

As to the remaining claims advanced on appeal, we reject Defendants' jury demands for the reasons stated in *Stuart. See Stuart,* 85 F.3d at 983–84.

## VI. *Orders Compelling Arbitration and Issuing Preliminary Injunctions*

To effectuate its orders compelling arbitration, the district court entered preliminary

injunctions, barring Defendants from prosecuting pending or proposed lawsuits against DAI.

As indicated above, the district court should have decided: (i) the fraudulent inducement issue as to all Defendants, *see supra* pt. II; and (ii) the waiver issue as to the Spearses, *see supra* pt. IV. Thus, we vacate the court's order granting DAI's motions to compel arbitration in all cases and remand for further proceedings consistent with this opinion. We also vacate the court's entry of the preliminary injunctions against all franchisees.

## VII. *Bond Requirement*

Defendants also argue that the district court abused its discretion by not requiring DAI to post a preliminary injunction bond. Because we vacate the entry of the preliminary injunctions, *see supra* pt. VI, there is no need to address this issue.

## CONCLUSION

We have fully considered all other claims advanced on this appeal, and find them unavailing. For the foregoing reasons, the judgment of the district court is AFFIRMED in part, and VACATED and REMANDED in part.