FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000137
28-FEB-2014
08:18 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

THOMAS NISHIMURA, COLETTE NISHIMURA, individually
and on Behalf of a Class of All Persons
Similarly Situated, Plaintiffs-Appellees,
v.
GENTRY HOMES, LTD., a Hawai'i Domestic
Profit Corporation, Defendant-Appellant
and
SIMPSON MANUFACTURING CO., INC., a Delaware Corporation;
SIMPSON STRONG-TIE COMPANY, INC., a California Corporation;
JOHN and JANE DOES 1-100, DOE PARTNERSHIPS 1-100; DOE
CORPORATIONS 1-100; DOE GOVERNMENTAL AGENCIES 1-100;
and DOES ASSOCIATIONS 1-100, Defendants

NO. CAAP-13-0000137

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-1522-07)

February 28, 2014

FOLEY, PRESIDING J., FUJISE AND LEONARD, JJ.

OPINION OF THE COURT BY FOLEY, J.

Defendant-Appellant Gentry Homes, Limited (**Gentry**)
appeals from the November 13, 2012 "Order Granting in Part and
Denying in Part Gentry Homes, Ltd.'s Motion to Compel Arbitration
Filed August 29, 2012" and the February 4, 2013 "Order Denying
Gentry Homes' Motion for Reconsideration of the Order Granting in

Part and Denying in Part Gentry Homes, Ltd.'s Motion to Compel Arbitration [Filed August 29, 2012], Filed on November 13, 2012" both entered in the Circuit Court of the First Circuit[1] (**circuit court**).

On appeal, Gentry contends the circuit court erred by:

(1) requiring the parties to meet and confer on the selection of a local arbitration service in contravention of the parties written agreement;

(2) finding the Professional Warranty Services Corporation (**PWC**), who was to select the arbitration service under method the parties' agreement, had a potential conflict of interest in serving in that capacity;

(3) finding PWC's potential conflict of interest was a sufficient basis to sever and strike portions of the parties' agreement providing a method for selecting an arbitration service;

(4) relying upon Rules of the Circuit Courts of the State of Hawai'i (**RCCH**) Rule 12.2 to order the parties to confer on the selection of a local arbitration service; and

(5) denying Gentry's motion for reconsideration.

## I. BACKGROUND

On October 12, 2011, Plaintiffs-Appellees Thomas and Colette Nishimura (**Nishimuras**) filed a First Amended Class Action Complaint (**Amended Complaint**) as individuals and on behalf of a class of others similarly situated, including homeowners, those with common interests in common elements of multi-family buildings, and any association of unit owners of the multi-family homes (collectively, **Nishimura Plaintiffs**) against "Designer, Developer and Builder Doe Defendants," including Gentry, and "Manufacturer Defendants," including Simpson Manufacturing Co., Inc. and Simpson Strong-Tie Company, Inc.[2] (collectively, **Simpson**). The Amended Complaint raised breach of contract, product liability, strict liability, negligence, breach of

---

[1] The Honorable Rhonda A. Nishimura presided.

[2] Simpson manufactures and sells a variety of building products, including hurricane straps.

implied warranty, breach of implied warranty of habitability, breach of warranty of merchantability, breach of express warranty, and violation of Hawaii Revised Statutes (**HRS**) § 480-2 claims in relation to alleged failures to protect their homes from hurricane-related damages.

Gentry is a Hawai'i corporation and the developer and seller of homes in Ewa Beach, Hawai'i. The Nishimuras reside in a single-family home developed, designed, and built by Gentry, which is part of a subdivision called Prescott II. Gentry used hurricane straps manufactured and sold by Simpson in the construction of the Nishimuras' home, which was originally owned by Eric and Julie Javier (**Javiers**).

On August 29, 2012, Gentry filed a motion to compel arbitration. Attached to their motion was: (1) the Javiers' Deposit Receipt and Sales Agreement dated February 16, 2004 (**DRSA**); (2) the Home Builder's Limited Warranty (**Limited Warranty**); (3) the Javiers' Limited Warranty Registration form, dated April 30, 2004; and (4) a warranty deed by which the Nishimuras purchased the Javiers' home, recorded on March 3, 2006. Gentry's Limited Warranty is administered by PWC and specifies that certain administrative services relative to the Limited Warranty are to be contracted with PWC.

Section VIII of the Limited Warranty, entitled, "Binding Arbitration Procedure" provides:

> Any disputes between YOU [homeowner and homeowners association] and US [the builder, Gentry], <u>or parties acting on OUR [Gentry's] behalf, including PWC</u>, related to or arising from this LIMITED WARRANTY, the design or construction of the HOME or the COMMON ELEMENTS or the sale of the HOME or transfer of title to the COMMON ELEMENTS will be resolved by binding arbitration. Binding arbitration shall be the sole remedy for resolving any and all disputes between YOU and US, or OUR representatives.

(Emphasis added.)

The arbitration clause of the Limited Warranty provided in relevant part: "The arbitration shall be conducted by Construction Arbitration Services, Inc. [(**CAS**)], or such other reputable arbitration service that PWC shall select, at its sole discretion, at the time the request for arbitration is

submitted." It also stated that, "[t]his arbitration agreement shall be governed by the United States Arbitration Act (9 U.S.C. §§ 1-16) to the exclusion of any inconsistent state law, regulation or judicial decision."

On September 20, 2012, Nishimura Plaintiffs filed their opposition to Gentry's motion to compel arbitration (**Opposition**). Nishimura Plaintiffs attached the following to their motion: (1) a screenshot of the CAS website; (2) a screenshot of PWC's website; (3) a listing of Zurich American Insurance Company's (**Zurich Insurance**) subsidiary companies, which included Steadfast Insurance Company (**Steadfast**); (4) Steadfast's Home Builders Protective Insurance Policy; and (5) a circuit court January 18, 2012 "Order Granting in Part and Denying in Part Defendants/Cross-Claimants Spinnaker Place Development, LLC, Ke Noho Kai Development, LLC, and Fairway's Edge Development, LLC's Motion to Compel Arbitration and Stay Judicial Proceedings of Claims by Plaintiffs Covered by the Home Builder's Limited Warranty, Filed November 17, 2011" (**January Arbitration Order**) filed in Kai, et al. v. Haseko Homes, Inc., Civ. No. 09-1-2834-12.

The CAS website screenshot indicated that CAS had "permanently exit[ed] from the binding construction arbitration dispute case administration business effective July 1, 2009."

The PWC website screenshot included a statement that PWC maintains a "strong relationship with one of the nation's largest insurance companies [Zurich Insurance]," the parent company of Steadfast. Steadfast's Home Builders Protective Policy identified itself as the insurer of developer/builder Haseko Homes, Inc. and Haseko Construction, Inc. (collectively, **Haseko**), who are named as defendants in another action pending before the same court, Alvarez v. Haseko Homes, Inc., Civ. No. 09-1-2697. In their Opposition, Nishimura Plaintiffs allege, the Alvarez case "involves the very same construction defect claims" at issue here, but in a different housing development. Nishimura Plaintiffs wrote, "just as PWC had a conflict of interest in selecting the arbitrator in the Alvarez matter, PWC also has an

4

issue [of] conflict in this litigation."

Nishimura Plaintiffs drew the circuit court's attention to the January Arbitration Order brought under an allegedly identical Limited Warranty in another related construction defect case against Haseko and other defendants, at which the Honorable Gary W.B. Chang presided. See Kai, et al. v. Haseko Homes, Inc., Civ. No. 09-1-2834-12. In Kai, the circuit court granted the motion to compel arbitration, but severed and struck the method of selecting the arbitration service specified in the Home Builder's Limited Warranty as follows:

> The method by which the arbitration service is to be selected under the [Home Builder's Limited Warranty] is severed and stricken on the ground of PWC's conflict of interest in this action. The parties to the arbitration shall agree by December 30, 2011, upon an arbitration service that is located in Hawai[']i. If the parties are unable to agree, defense counsel shall notify the [circuit c]ourt in writing, and the [circuit c]ourt shall proceed to select an arbitration service, which will select a specific arbitrator.

The January Arbitration Order in Kai is currently on appeal before this court. See CAAP-12-0000302.

On September 28, 2012, the circuit court held a hearing on Gentry's motion to compel arbitration. In response to the circuit court's inquiry into whether there is a particular arbitration service to which both sides would be amenable, Gentry's counsel replied, "No. I think that is something that the parties would have to discuss . . . ."

The circuit court proceeded to rule on the issue of PWC's alleged conflict of interest, stating:

> certain issues that ha[ve] been raised and in terms of the evidentiary, just on the face of it, you know, there is a potential conflict, or without going through an evidentiary hearing full-on or reserving it for the arbitration service, to me, and I agree with Judge Chang['s order in the Kai case], as a practical and as a pragmatic matter, because you don't want to potentially reserve that in the future. You know, the less you have to reserve in the future as possible appealable issues the better because if you have to go to trial, you want to go to trial on as clean as possible issues as you can.
>
> . . . .
>
> That's just as a practical matter.
>
> So granting your motion to compel, but also insert in your order regarding that the [circuit c]ourt has directed both parties to meet and confer on the selection of a local

> arbitration service, and if the same cannot be agreed upon by the parties, then the [circuit c]ourt under [RCCH] 12.2 will invoke its authority to then select from the two [alternative arbitration services.]

On November 13, 2012, the circuit court filed its "Order Granting in Part and Denying in Part Gentry Homes, Ltd.'s Motion to Compel Arbitration Filed August 29, 2012" (**November Arbitration Order**). The circuit court ordered the parties to arbitrate Nishimura Plaintiffs' claims as set forth in their Amended Complaint, but denied Gentry's motion insofar as it specified that PWC would select the arbitration service.

> Accordingly, the method by which the arbitration service is to be selected under the Home Builders' Limited Warranty is severed and stricken. Pursuant to [RCCH] Rule 12.2., this [circuit c]ourt orders that [Nishimura] Plaintiffs and Gentry shall meet and confer on the selection of a local arbitration service within forty-five (45) days of entry of this Order. If [Nishimura] Plaintiffs and Gentry are unable to agree, the [circuit c]ourt shall select a local arbitration service for this matter.

On November 26, 2012, Gentry filed a motion for reconsideration of the November Arbitration Order, pursuant to Hawai'i Rules of Civil Procedure (**HRCP**) Rules 7, 59, and 60. Nishimura Plaintiffs opposed Gentry's motion for reconsideration, contending the order is not void and no exceptional circumstances existed to warrant application of HRCP Rule 60(b).

On January 22, 2013, the circuit court held a hearing on Gentry's motion for reconsideration. In response to the circuit court's inquiry into whether employing a U.S. mainland-based arbitrator would be more expensive, Gentry replied that any answer would be speculative and that the parties would bear their own costs. Gentry stated that it did not know which arbitration service PWC would have selected, but it would have been a national, not locally-based arbitration service. Also at the hearing, the circuit court noted Judge Chang's order in the Kai case and stated, "apparently [Judge Chang] did make a finding that PWC has a conflict on interest[;] apparently PWC was the selector under the [Limited Warranty] of the arbitration service. [Judge Chang] did make a showing of a conflict of interest such as to strike that part."

6

On February 4, 2013, the circuit court filed its "Order Denying Gentry Homes' Motion for Reconsideration of the Order Granting in Part and Denying in Part Gentry Homes, Ltd.'s Motion to Compel Arbitration [Filed August 29, 2012], Filed on November 13, 2012."

Gentry filed a notice of appeal on March 6, 2013 and an amended notice of appeal on March 15, 2013.

## II.   DISCUSSION

Gentry contends: (1) RCCH Rule 12.2 did not authorize the circuit court to strike the arbitration provision that stated PWC would select the arbitration service; (2) the circuit court reversibly erred by failing to order the parties to arbitrate pursuant to all terms of the Limited Warranty; (3) the circuit court lacked jurisdiction under the Federal Arbitration Act, 9 U.S.C. § 2-16 (West, Westlaw through P.L. 113-52), (**FAA**), to address Nishimura Plaintiffs' pre-arbitration challenge; (4) Nishimura Plaintiffs have not made a prima facie showing that enforcement of the Limited Warranty would result in bias or impartiality favoring Gentry; and (5) the circuit court erred by denying Gentry's motion for reconsideration.

The Limited Warranty authorized PWC to select a "reputable" arbitration service "at its sole discretion[,]" in the event that CAS did not do so.  Because CAS was no longer available to conduct the arbitration, enforcement of the Limited Warranty would give PWC control over the selection of a "reputable" arbitration service.  The Limited Warranty did not define the term, "reputable arbitration service[.]"

The Limited Warranty is governed by the FAA, "to the exclusion of any inconsistent state law, regulation or judicial decision."  Under the FAA, written provisions in arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (emphasis added).  "This saving clause [in the FAA] permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability[.]"  AT&T Mobility LLC v.

Concepcion, 131 S. Ct. 1740, 1746 (U.S. 2011) (citations and internal quotation marks omitted). The FAA further provides for vacating an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them[.]" 9 U.S.C. § 2(a)(2).

Similar to the 9 U.S.C. § 2 savings clause, the Hawai'i's Uniform Arbitration Act (**HUAA**), HRS Chapter 658A contains a savings clause that concerns the validity of arbitration agreements:

> An agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract.

HRS § 658A-6(a) (Supp. 2012).

Also similar to FAA, HUAA provides for the application of an "evident partiality" standard to determine whether an arbitration award should be vacated. HRS § 658A-23(a)(2)(A) (Supp. 2012). "Evident partiality" is distinct from "actual bias." Kay v. Kaiser Found. Health Plan, Inc., 119 Hawai'i 219, 226, 194 P.3d 1181, 1188 (App. 2008). "Evident partiality not only exists when there is actual bias on the part of the arbitrator, but also when undisclosed facts show a reasonable impression of partiality." Kay, 119 Hawai'i at 226, 194 P.3d at 1188 (citation and internal quotation marks omitted).

FAA and HUAA specify that illegal and inequitable agreements are not valid, enforceable, and/or irrevocable. See 9 U.S.C. § 2 and HRS § 658A-6(a). To constitute a valid arbitration agreement, provisions for the method of selecting an arbitrator must not be unconscionable and unconscionable arbitration provisions are severable from the remainder of the contract. See 9 U.S.C. § 2; Rent-A-Ctr., W., Inc. v. Jackson, 130 S. Ct. 2772, 2778 (2010). The Ninth Circuit has held, "arbitration provisions that are 'unfairly one-sided' are substantively unconscionable[.]" Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1281 (9th Cir. 2006) (citation omitted).

HUAA prohibits "[a]n individual who has a known,

8

direct, and material interest in the outcome of the arbitration proceeding or a known, existing, and substantial relationship with a party" from serving as an arbitrator where the agreement requires a "neutral" arbitrator. HRS §658A-11(b) (Supp. 2012). Provisions for a neutral or disinterested arbitrator are a relevant consideration in determining whether an arbitration agreement is valid and enforceable under FAA as well. See 9 U.S.C. § 2; Sehulster Tunnels/Pre-Con v. Traylor Brothers, Inc./Obayashi Corp., 4 Cal. Rptr. 3d 655, 666 (Cal. Ct. App. 2003); Fields v. NCR Corp., 683 F.Supp.2d 980, 990 (S.D. Iowa 2010) (holding an arbitration process not "substantively unfair" where it provided for a neutral arbitrator); Morgan v. Sci. Applications Int'l Corp., 612 F.Supp.2d 81, 83 (D.D.C. 2009). A 'disinterested' arbitrator is one who lacks a financial or other personal stake in the outcome of the arbitration. Trustmark Ins. Co. v. John Hancock Life Ins. Co. (U.S.A.), 631 F.3d 869, 872 (7th Cir. 2011) cert. denied, 131 S. Ct. 2465 (2011).

Upon CAS' exit from the arbitration business, the Limited Warranty authorized PWC to select a reputable arbitration service in its sole discretion. PWC's alleged conflict of interest is based on its business relationships with Gentry and insurers of other home builder/developers engaged in litigation concerning alleged-identical construction defect claims. PWC has a business relationship with Zurich Insurance, parent company of Steadfast. Steadfast is the insurer of builder/developer Haseko, who is defending against claims of hurricane-proofing related construction defects. See Alvarez v. Haseko Homes, Inc., Civ. No. 09-1-2697; Kai v. Haseko Homes, Inc., Civ. No. 09-1-2834-12. Nishimura Plaintiffs contend PWC's interests in maintaining arbitration contracts with insurance companies (Zurich Insurance and Steadfast), and those insurance companies' interests in avoiding liability for hurricane-proofing related construction defects, creates a situation in which PWC's interests would lead it to favor Gentry and, presumably, Gentry's insurers.

Nishimura Plaintiffs also point to the Limited Warranty's identification of PWC as a "part[y] acting on

[Gentry's] behalf[,]" as evidence of PWC's partiality. Language in the Limited Warranty indicating that PWC would act "on [Gentry's] behalf[,]" however, does not establish PWC's improper motives or evident partiality. PWC acts in its role, on Gentry's behalf, as Gentry's Warranty Administrator in selecting a reputable arbitration service. The purpose of PWC taking these actions on behalf of Gentry is to put distance between Gentry's interests and the arbitrator, not to select an arbitration service that would resolve arbitration in favor of Gentry.

Nishimura Plaintiffs cite to Sixth Circuit decisions on pre-arbitration challenges to the arbitration-selection process. Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 385 (6th Cir. 2005); and McMullen v. Meijer, Inc., 355 F.3d 485, 493 (6th Cir. 2004). In Walker, employee-plaintiffs entered into an arbitration agreement with Employment Dispute Services, Inc. (**EDSI**) as opposed to the employer-defendant; EDSI itself would have served as the arbitration service for employee-employer disputes; EDSI's lack of protocols in selecting adjudicators could permit a biased arbitration panel; and annual fees paid by Walker employer-defendant accounted for over 42% of EDSI's gross income. Walker, 400 F.3d at 374, 375, 386, 387. By contrast, under the Limited Warranty, PWC would not itself serve as an arbitrator and was required to select a reputable arbitration service.

The arbitration clause at issue in McMullen gave the employer-defendant unilateral control over the pool of potential arbitrators, as opposed to the Limited Warranty's provision for PWC, and not Gentry, to select an arbitration service. McMullen, 355 F.3d at 492. McMullen concluded the employer-defendant's practice of employing the same panel of five to seven arbitrators demonstrated a risk of bias rendering the arbital forum an ineffective substitute for a judicial forum because the former inherently lacked neutrality. McMullen, 355 F.3d at 494. McMullen is inapposite because the arbitration service selected by PWC, not PWC or Gentry, would control the pool of potential arbitrators under the Limited Warranty. We decline to conclude

that PWC's potential conflict of interest constitutes bias rendering the arbitrator-selection process under the Limited Warranty so "fundamentally unfair" as to be unenforceable.

In this case, the circuit court invalidated the arbitration selection provision before PWC even designated the "reputable arbitration service" that would pick the neutral arbitrator and before the neutral arbitrator was selected. The circuit court's actions were premature. Nishimura Plaintiffs are not precluded from challenging the arbitration service designated by PWC or the neutral arbitrator selected by that service for bias upon appropriate proof before the start of the arbitration proceedings. However, the circuit court's action of invalidating the arbitration selection provision and divesting PWC of the opportunity to even designate an arbitration service was improper.

In order to avoid enforcement of an allegedly unconscionable arbitration clause, Nishimura Plaintiffs were required to present evidence of actual partiality or bias of the arbitration service designated by PWC or the neutral arbitrator selected. Doctor's Associates, Inc. v. Stuart, 85 F.3d 975, 981 (2nd Cir. 1996) (holding that an arbitration agreement was not unconscionable where the agreement's plain language put parties on notice of potential arbitration costs and the party seeking to avoid enforcement failed to present credible evidence indicating bias on the part of the arbitrator-selector or its arbitrators, "particularly because [the parties'] claims have not yet gone to arbitration.") (citing 9 U.S.C. § 10(a)). Nishimura Plaintiffs' contentions, based on circumstances of PWC's business relationships, constitutes a "generalized attack" on PWC's impartiality as an arbitration service selector and thus "rest on suspicion of arbitration . . . [that is] far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30 (U.S. 1991) (citation, internal quotation marks, and brackets omitted); see also Marsh v. First USA Bank, N.A., 103 F.Supp.2d 909 (N.D. Texas 2000) (rejecting credit card

11

holder's pre-arbitration contention that the arbitration service-selector and defendant bank would select biased arbitrators to defeat their consumer claims as "merely illusory" concerns).

Gentry cites Carboni v. Lake, 562 F.Supp.2d 585 (S.D.N.Y. 2008), which held: 9 U.S.C. § 10 (providing for the vacation of an arbitration award) does not authorize a court to refuse to enforce an arbitration agreement on the basis of one party's perception that the proceedings will favor his or her opponent; and a party attempting to avoid arbitration must show that 9 U.S.C. § 10 and applicable state rules were inadequate to guard against potential bias on the part of the arbitrator. Id. Rather than providing for parties to avoid arbitration through pre-arbitration challenges, FAA "protects against bias, by providing that courts may overturn arbitration decisions '[w]here there was evident partiality or corruption of the arbitrators.'" Gilmer, 500 U.S. at 30 (citing 9 U.S.C. § 10(b)) (declining "to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators."). Because Nishimura Plaintiffs failed to prove that the arbitration selection process would necessarily result in actual partiality or bias, the circuit court should have confined judicial review to the fairness of the completed arbitration award, at which time 9 U.S.C. § 10 could provide for vacating the award upon a finding that the arbitrators acted with evident partiality.

As with other contracts, courts must enforce arbitration agreements according to their terms. AT&T Mobility LLC, 131 S. Ct. at 1745. "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed[.]" 9 U.S.C. § 5. The Limited Warranty provided that PWC should select the parties' arbitration service in the event that CAS could not do so. The circuit court should have required the parties to arbitrate their dispute pursuant to the Limited Warranty. We conclude that the circuit court reversibly erred by denying Gentry's August 29, 2012 motion to compel arbitration. Because we so conclude, we

12

need not reach Gentry's other points on appeal.

### III. CONCLUSION

For the foregoing reasons, the November 13, 2012 "Order Granting in Part and Denying in Part Gentry Homes, Ltd.'s Motion to Compel Arbitration Filed August 29, 2012" and the February 4, 2013 "Order Denying Gentry Homes' Motion for Reconsideration of the Order Granting in Part and Denying in Part Gentry Homes, Ltd.'s Motion to Compel Arbitration [Filed August 29, 2012], Filed on November 13, 2012" both entered in the Circuit Court of the First Circuit are vacated, and this case is remanded for further proceedings consistent with this opinion.


On the briefs:

Ryan H. Engle
Sarah M. Love
Summer L. Sylva
(Bays Lung Rose & Holma)
for Defendant-Appellant.

Melvin Y. Agena
(Law Offices of Melvin Y. Agena)
and
Glenn K. Sato
(Law Office of Glenn K. Sato)
and
Graham B. Lippsmith
(Girardi Keese)
for Plaintiffs-Appellees.