*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCWC-13-0000137
31-OCT-2014
09:35 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

THOMAS NISHIMURA, COLETTE NISHIMURA,
Individually and on Behalf of a Class of All Persons
Similarly Situated, Petitioners/Plaintiffs-Appellees,

vs.

GENTRY HOMES, LTD.,
a Hawai'i Domestic Profit Corporation,
Respondent/Defendant-Appellant,

and

SIMPSON MANUFACTURING CO., INC., a Delaware Corporation;
SIMPSON STRONG-TIE COMPANY, INC., a California Corporation,
Defendants.

_____

SCWC-13-0000137

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0000137; CIV. NO. 11-1-1522-07)

OCTOBER 31, 2014

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This appeal raises an issue of first impression in Hawaiʻi: what standard applies in reviewing the enforceability of an arbitrator-selection provision?  We adopt the "fundamental fairness" standard set forth by the United States Court of Appeals for the Sixth Circuit in McMullen v. Meijer, Inc., 355 F.3d 485 (6th Cir. 2004), and we hold that the arbitrator-selection provision at issue in this appeal was fundamentally unfair, because it gave the defendant's agent "sole discretion" to select an arbitration service to resolve a dispute between the plaintiffs and defendant.  In the instant case, the Circuit Court of the First Circuit ("circuit court")[1] properly severed and struck the arbitrator-selection provision and ordered the parties to meet and confer to select an arbitration service.  The circuit court also properly reserved for itself the authority to appoint an arbitration service if the parties could not come to an agreement.  Therefore, we vacate the ICA's judgment on appeal, which vacated the circuit court's "Order Granting in Part and Denying in Part Defendant Gentry Homes, Ltd.'s Motion to Compel Arbitration Filed August 29, 2012," and its "Order Denying Gentry Homes' Motion for Reconsideration of the Order Granting in Part and Denying in Part Gentry Homes,

---

[1]     The Honorable Rhonda A. Nishimura presided.

2

Ltd.'s Motion to Compel Arbitration [Filed August 29, 2012], Filed on November 13, 2012."  The circuit court's orders are affirmed.

## II.  Background

### A.  Circuit Court Proceedings

#### 1.    The First Amended Class Action Complaint

On October 12, 2011, Petitioners/Plaintiffs-Appellees Thomas Nishimura and Colette Nishimura, individually and on behalf of a class of all persons similarly situated ("Nishimuras"), filed their First Amended Class Action Complaint.  The Nishimuras alleged that Gentry Homes, Ltd. ("Gentry") constructed the Nishimuras' home without adequate high wind protection.

#### 2.  Motion to Compel Arbitration

On August 29, 2012, Gentry filed its Motion to Compel Arbitration, pursuant to the following provision in the Home Builder's Limited Warranty ("HBLW") between Gentry and the Nishimuras (with emphasized portions relevant to this appeal):

> VIII.  Binding Arbitration Procedure
> Any disputes between YOU and US, or parties acting on OUR behalf, including PWC,[2] related to or arising from this LIMITED WARRANTY, the design or construction of the HOME or the COMMON ELEMENTS or the sale of the HOME or transfer of title to the COMMON ELEMENTS will be resolved by binding arbitration.  Binding arbitration shall be the sole remedy for resolving any and all disputes between YOU and US, or OUR representatives.
> . . . .

---

[2]    "PWC" stands for "Professional Warranty Service Corporation," the company administering the HBLW pursuant to a contract with Gentry.

> The arbitration shall be conducted by Construction Arbitration Services, Inc., or such other reputable arbitration service that PWC shall select, at its sole discretion, at the time the request for arbitration is submitted. The rules and procedures of the designated arbitration organization, that are in effect at the time the request for arbitration is submitted, will be followed. A copy of the applicable rules and procedures will be delivered to YOU upon request.
>
> This arbitration agreement shall be governed by the United States Arbitration Act (9 U.S.C. §§ 1-16) to the exclusion of any inconsistent state law, regulation or judicial decision. The award of the arbitrator shall be final and binding and may be entered as a judgment in any court of competent jurisdiction. . . .

The Nishimuras' Opposition to Gentry Homes' Motion to Compel Arbitration drew the circuit court's attention to a notice on Construction Arbitration Services, Inc.'s website, announcing that it had "permanently exit[ed] from the binding construction arbitration dispute case administration business effective July 1, 2009." (Emphasis in original.) Thus, under the HBLW's arbitrator-selection provision, PWC was authorized to "select, at its sole discretion" "such other reputable arbitration service" to conduct the arbitration. "Reputable" was not defined in the HBLW. The Nishimuras argued that the instant arbitrator-selection provision contained no safeguards against "potential bias," and that PWC was empowered to choose any arbitrator, including one with a pro-defense view.

The Nishimuras feared that PWC would select an arbitration service aligned with developers, because PWC marketed its "close relationship" with Zurich, the parent of the insurance company for Haseko Homes, Inc. and Haseko Construction, Inc., which at

that time was also being sued for the same construction defect as in the instant case. The Nishimuras alleged that PWC would have a "strong financial incentive in helping secure an outcome in favor of Gentry in the instant action. . . ." They noted that another circuit court judge had severed and stricken the arbitrator-selection provision in the Haseko case "on the ground of PWC's conflict of interest. . . ." The Nishimuras argued, "Allowing a party so closely aligned with the defendants in a similar case involving similar claims before this Court to unilaterally select the arbitrator would deprive Plaintiffs of a fair and effective forum in which to vindicate their claims." In support of their argument, the Nishimuras cited, inter alia, McMullen, 355 F.3d 485.

In its Reply, Gentry argued that the Nishimuras set forth "no evidence of bias with the ultimate arbitrator," because none had been selected. Gentry pointed out that the arbitration-selection provision authorized PWC to choose an arbitration service, not the ultimate arbitrator. Gentry also argued that a party who does not consent to the other party's choice of arbitrator can petition the court to appoint an arbitrator. Gentry also argued that a party must await the conclusion of arbitration to raise a challenge of "evident partiality" in the arbitrator.

5

At a hearing on the Motion to Compel Arbitration, counsel for the Nishimuras asked the circuit court to sever and strike the arbitrator-selection provision, order the parties to agree to a local arbitrator, or appoint one itself, as another circuit court had done in the Haseko case. Counsel for Gentry countered that he did not believe the circuit court had the authority to order the parties to agree to an arbitrator. The circuit court, on the other hand, stated that "just on the face of" the HBLW arbitrator-selection provision, "there is a potential conflict . . . ." The circuit court stated to Gentry's counsel, "[T]he less you have to reserve in the future as possible appealable issues, the better. . . ."

The circuit court therefore granted in part and denied in part Gentry's Motion to Compel Arbitration. While it ordered the Nishimuras to arbitrate their claims against Gentry, the circuit court found the following:

> The Motion is DENIED to the extent that this Court finds that there is a potential conflict of interest with Professional Warranty Services, Inc. ("PWC") selecting the arbitration service as set forth under the Home Builder's Limited Warranty. Accordingly, the method by which the arbitration service is to be selected under the Home Builders' Limited Warranty is severed and stricken. Pursuant to Hawaii Rules of the Circuit Courts Rule 12.2[3],

---

[3] Hawai'i Rules of the Circuit Courts ("RCCH") Rule 12.2(a) (2012) provides the following, in relevant part:
> **Authority to order.** The court, sua sponte or upon motion by a party, may, in exercise of its discretion, order the parties to participate in a non-binding Alternative Dispute Resolution process (ADR or ADR process) subject to terms and conditions imposed by the court. ADR includes mediation, summary jury trial, neutral evaluation, non-
> (continued. . .)

this Court orders that Plaintiffs and Gentry shall meet and confer on the selection of a local arbitration service within forty-five (45) days of entry of this Order.  If Plaintiffs and Gentry are unable to agree, the Court shall select a local arbitration service for this matter.

### 3.  Motion for Reconsideration

Gentry filed a Motion for Reconsideration of the circuit court's order asking the court to set aside the provision severing and striking the arbitrator-selection provision.  In addition to reiterating arguments that the time to challenge arbitrator bias is post-award and that the Nishimuras had presented no evidence of bias or potential bias, Gentry argued that RCCH Rule 12.2 did not authorize the circuit court to "modify the parties' agreement for binding arbitration. . . ."  Gentry argued that RCCH Rule 12.2 authorizes court-mandated non-binding arbitration, not binding arbitration, which is what the parties had agreed to in the HBLW.

In the Nishimuras' Opposition to Gentry's Motion for Reconsideration, they argued that the circuit court had "broad discretion to appoint an arbitration service (or here, order the parties to meet and confer to appoint one) when the specified arbitration service is no longer in business or the arbitrator

_____

[3] (. . .continued)
binding arbitration, presentation to a focus group, or other such process the court determines may be helpful in encouraging an economic and fair resolution of all or any part of the disputes presented in the matter.

7

is partial to one of the parties."  The Nishimuras then cited to

9 U.S.C. § 5 (2009),[4] which states the following:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

The circuit court denied Gentry's Motion for Reconsideration.  Gentry then timely appealed the circuit court's order granting in part and denying in part its Motion to Compel Arbitration, as well as the circuit court's order denying its Motion for Reconsideration.

## B.  ICA Appeal

### 1.  Opening Brief

In its Opening Brief, Gentry raised the following Points of Error:

> 1.  Whether the trial court erred in denying, in part, Gentry's Motion to Compel Arbitration and ordering Gentry and Plaintiffs to meet and confer on the selection of the arbitration service in contravention of the express terms of the parties' arbitration agreement as set forth in the [HBLW] that Plaintiffs rely upon in bringing their claims against Gentry.
> 2.  Whether the trial court erred in denying Gentry's Motion for Reconsideration.

---

[4]     9 U.S.C. § 5 is a provision in the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (2009) ("FAA").  The parties do not dispute that the FAA governs their arbitration agreement.

> 3. Whether the trial court erred in finding that PWC had a potential conflict of interest in selecting the arbitration service pursuant to the terms of the parties' arbitration agreement as set forth in the [HBLW].
> 4. Whether the trial court erred in finding that PWC's potential conflict in selecting the arbitration service was a sufficient basis to strike that portion of the parties' arbitration agreement requiring PWC to select the arbitration service in order to avoid a future appealable issue.
> 5. Whether the trial court erred in relying upon Hawaiʻi Rules of the Circuit Courts Rule 12.2 as the basis to order the parties to meet and confer on the selection of a local arbitration service in contravention of the express terms of the parties' arbitration agreement as set forth in the [HBLW] requiring PWC to select the arbitration service.

Gentry first argued that RCCH Rule 12.2 governs non-binding arbitration and did not authorize the circuit court to order the parties into binding arbitration.

Gentry next argued that the circuit court "lacked jurisdiction under the FAA to entertain the Nishimuras['] pre-arbitration challenge to the partiality of the not yet selected arbitrator." Gentry cited to 9 U.S.C. § 10 (2009)[5] as authority for its position that the time to challenge the arbitrator's partiality is after the issuance of the arbitration award, when the court is authorized to vacate an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them."

Gentry argued that, even if the circuit court had jurisdiction to entertain the Nishimura's pre-arbitration

---

[5] 9 U.S.C. § 10(a)(2) (2009) provides the following, in relevant part: "[T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration -- . . . where there was evident partiality or corruption in the arbitrators, or either of them."

"challenge to the partiality of the not-yet-selected arbitrator," the Nishimuras did not establish that any arbitration service selected by PWC pursuant to the HBLW would be biased toward Gentry.  Gentry cited Phillips v. Assocs. Home Equity Servs., Inc., 179 F.Supp.2d 840, 845 (N.D. Ill. 2001), for the following proposition:  "In the absence of credible evidence of actual bias in favor of the lenders, we 'decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.'"  (Emphasis added.)  Gentry also cited Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 981 (2d Cir. 1996), for its rejection of the defendants' argument that an arbitration agreement was unconscionable, because the defendants "failed to present any credible evidence indicating bias on the part of the [arbitration service or its arbitrators,] particularly because [d]efendants' claims have not yet gone to arbitration."

### 2.  Answering Brief

In their Answering Brief, the Nishimuras disagreed with Gentry's argument that a challenge to the arbitrator-selection process must be raised after the arbitrator has issued an arbitration award.  The Nishimuras cited McMullen, 355 F.3d 485, and Walker v. Ryan's Family Steak Houses, Inc., 400 F.3d 370, 385 (6th Cir. 2005), for the proposition that "the general rule

prohibiting pre-arbitration challenges to an allegedly biased arbitration panel does not extend to an allegation that the arbitrator-selection process itself is fundamentally unfair. In such a case, 'the arbitral forum is not an effective substitute for a judicial forum,' and, therefore, the party need not arbitrate first and then allege bias through post arbitration judicial review." The Nishimuras argued that once a court determines that the arbitrator-selection process is fundamentally unfair, then 9 U.S.C. § 5 authorizes the court to "choose an alternative method for selecting the arbitrator."

Next, the Nishimuras argued that there was sufficient evidence to support the circuit court's finding that PWC had a conflict of interest rendering the arbitration-selection provision fundamentally unfair, based upon PWC's relationship with insurance companies and builders, as well as the language of the HBLW. The Nishimuras pointed out that "the arbitrator selection process contains no safeguards against potential bias," and that PWC, acting on Gentry's behalf, "can literally choose any arbitration service it unilaterally deems to be 'reputable. . . .'"

As to Gentry's argument that RCCH Rule 12.2 did not authorize the circuit court to order the parties to meet and confer to select a local arbitration service, the Nishimuras counter-argued that the circuit court relied on that rule only

11

for the limited purpose of ordering the parties to attempt to agree on an arbitration service; it did not order the parties into binding arbitration under the rule.

### 3. The ICA's Published Opinion

The ICA issued a published opinion. Nishimura v. Gentry Homes, Ltd., 133 Hawai'i 222, 325 P.3d 634 (App. 2014). The ICA asserted that the HBLW provision stating that PWC "act[s] on [Gentry's] behalf" merely served to "put a distance between Gentry's interest and the arbitrator," but did not authorize PWC to potentially "select an arbitration service that would resolve arbitration in favor of Gentry." 133 Hawai'i at 228, 325 P.3d at 640. As such, the ICA concluded that the HBLW's language "does not establish PWC's improper motives or evident partiality." Id.

The ICA then distinguished Walker, 400 F.3d 370, and McMullen, 355 F.3d 485, from the instant case. 133 Hawai'i at 228, 325 P.3d at 640. The ICA distinguished Walker, stating that the plaintiff employees in Walker entered into an arbitration agreement with the very entity that would arbitrate their disputes with their employer, unlike the instant case, where PWC "would not itself serve as an arbitrator and was required to select a reputable arbitration service." Id. The ICA distinguished McMullen, stating that the arbitration clause

12

at issue in that case gave the defendant employer unilateral control over the pool of potential arbitrators, unlike the instant case, where PWC, not Gentry, selects an arbitration service. Id. The ICA then "decline[d] to conclude that PWC's potential conflict of interest constitutes bias rendering the arbitrator-selection process under the [HBLW] so 'fundamentally unfair' as to be unenforceable." Id. The ICA then concluded that the circuit court's actions in invalidating the arbitrator-selection provision before PWC selected the arbitration service were premature and improper. Id. According to the ICA, "Nishimura Plaintiffs are not precluded from challenging the arbitration service designated by PWC or the neutral arbitrator selected by that service for bias upon appropriate proof before the start of the arbitration proceedings." Id.

Although its discussion up to this point in the opinion focused on the fundamental fairness of the arbitrator-selection process, the ICA's opinion then shifted to a discussion on unconscionability. Id. Specifically, the ICA held, "In order to avoid enforcement of an allegedly unconscionable arbitration clause, Nishimura Plaintiffs were required to present evidence of actual partiality or bias of the arbitration service designated by PWC or the neutral arbitrator selected." Id. (citing Doctor's Assocs. Inc., 85 F.3d at 981) (emphasis added). The ICA then cited Gilmer v. Interstate/Johnson Lane Corp., 500

13

U.S. 20, 30 (1991), to conclude that the Nishimuras' contentions, "based on circumstances of PWC's business relationships," constituted merely a "'generalized attack' on PWC's impartiality," resting on a suspicion of arbitration out of step with the United States Supreme Court's endorsement of this method of dispute resolution. 133 Hawai'i at 229, 325 P.3d at 641. Without proof of "actual partiality or bias," the ICA held, "the circuit court should have confined judicial review to the fairness of the completed arbitration award, at which time 9 U.S.C. § 10 could provide for vacating the award upon a finding that the arbitrators acted with evident partiality." Id.

The ICA then concluded that the circuit court should have enforced the HBLW's arbitrator-selection provision. Id. The ICA vacated the order granting in part and denying in part Gentry's motion to compel arbitration, as well as the order denying Gentry's motion for reconsideration. Id. The ICA then remanded the case to the circuit court for further proceedings. Id.

## III. Standard of Review

An appellate court reviews a trial court's order granting or denying a motion to compel arbitration de novo, using the "same standard employed by the trial court and based upon the same evidentiary materials 'as were before [it] in determination

of the motion."  Koolau Radiology, Inc. v. Queens Med. Ctr., 73

Haw. 433, 440, 834 P.2d 1294, 1298 (1992) (citations omitted).

## IV.  Discussion

### A.  The "Fundamental Fairness" Standard in Challenges to the Arbitrator-Selection Process

Preliminarily, we note that the parties agree that the HBLW

is governed by the FAA.  9 U.S.C. § 2 (2009) provides the

following:

> A written provision in any maritime transaction or a
> contract evidencing a transaction involving commerce to
> settle by arbitration a controversy thereafter arising out
> of such contract or transaction, or the refusal to perform
> the whole or any part thereof, or an agreement in writing
> to submit to arbitration an existing controversy arising
> out of such a contract, transaction, or refusal, shall be
> valid, irrevocable, and enforceable, save upon such grounds
> as exist at law or in equity for the revocation of any
> contract.

(Emphasis added).  Thus, under the FAA, invalidation of an

arbitration provision is authorized.  In determining whether an

arbitrator-selection provision is enforceable, we adopt the

"fundamental fairness" standard set forth by the Sixth Circuit

in McMullen, 355 F.3d 485.

In McMullen, on the eve of arbitration, after an arbitrator

had been selected, a plaintiff employee ("McMullen") brought an

action challenging the fairness of the arbitrator-selection

process.  355 F.3d at 488.  The arbitration agreement granted

her employer "exclusive control over the pool of potential

arbitrators from which the arbitrator is selected."  355 F.3d at

487.  From that pool of potential arbitrators, the employer and

employee each struck an arbitrator until only one remained. 355 F.3d at 488.

McMullen's employer counter-argued that the bias McMullen "fears will manifest itself during her arbitration hearing is, at this point, merely potential bias." 355 F.3d at 494 (emphasis in original). Quoting Gilmer, the Sixth Circuit acknowledged that the United States Supreme Court, "when presented with an allegation of hypothetical bias, 'decline[d] to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.'" Id. (citing Gilmer, 500 U.S. at 30). The Sixth Circuit recognized, however, that McMullen's claim went "beyond an allegation of a potentially biased arbitrator because McMullen cites a lack of fairness inherent in the arbitrator-selection process." Id. The Sixth Circuit explained that the employer's arbitration agreement "grants one party to the arbitration unilateral control over the pool of potential arbitrators. This procedure prevents [the employer's arbitration program] from being an effective substitute for a judicial forum because it inherently lacks neutrality." Id. (footnote omitted).

Like Gentry, McMullen's employer also argued that "Gilmer clearly establishes that the preferred method of challenging allegations of bias is to pursue the underlying claims through

16

the arbitration process and then seek review only '[w]here there was evident partiality or corruption in the arbitrators [under 9 U.S.C. § 10].'"  355 F.3d at 494 n.7.  The Sixth Circuit disagreed.  The court stated, "While this is true for allegations of potential or hypothetical bias among the arbitrators, it does not apply to an allegation, as is present here, that the arbitrator-selection process is fundamentally unfair. . . .  [P]rocedural unfairness inherent in an arbitration agreement may be challenged before the arbitration."  Id.  As such, the Sixth Circuit recognized, "When the process used to select the arbitrator is fundamentally unfair, as in this case, the arbitral forum is not an effective substitute for a judicial forum, and there is no need to present separate evidence of bias or corruption in the particular arbitrator selected."  Id.

Several cases since McMullen have also explored fundamental fairness in arbitrator-selection clauses.  In Walker, 400 F.3d 370, plaintiff employees filed a complaint for FLSA violations against the defendant employer, Ryan's Family Steak Houses, Inc. ("Ryan's").  400 F.3d at 373.  Ryan's moved to compel arbitration and to dismiss the complaint.  Id.  The district court denied the motion, concluding, inter alia, that the arbitration forum outlined in the arbitration agreements between employer and employees did not provide for effective vindication

17

of statutory claims and was an inappropriate substitute for the judicial forum. Id. The Sixth Circuit affirmed. 400 F.3d at 372.

In the Walker case, the employees signed arbitration agreements with Employment Dispute Services Inc., ("EDSI"), not their employer, Ryan's. 400 F.3d at 374. Ryan's had entered into a contract with EDSI to have EDSI administer an employment dispute resolution program. Id. By entering into the arbitration agreements with EDSI, the employees agreed to submit all employment disputes with Ryan's to binding arbitration with EDSI. 400 F.3d at 375. The arbitration rules provided that EDSI would select a panel of three potential arbitrators from the following separate pools: "(1) supervisors or managers of an employer signatory to an agreement with EDSI; (2) employees who are non-exempt from the wage and hour protections of the Fair Labor Standards Act; and (3) attorneys, retired judges, or other competent legal professional persons not associated with either party." Id. From the pool of potential arbitrators selected by EDSI, the employee and employer would alternately strike names until only one name remained. 400 F.3d at 376.

In Walker, the Sixth Circuit again acknowledged the general rule, set forth in Gilmer, that a party cannot avoid the arbitration process simply by alleging the arbitration panel will be biased, because 9 U.S.C. § 10 allows for the vacation of

an arbitration award, post-arbitration, for evident partiality in the arbitrator. 400 F.3d at 385. The Walker Court also recognized the exception set forth in McMullen for pre-arbitration challenges to the fundamental fairness of the arbitrator-selection process. Id. The Walker court then held that EDSI's arbitral forum was not neutral and, therefore, the arbitration agreements were unenforceable. 400 F.3d at 385-86.

The specific evidence the Walker court considered was that EDSI was a for-profit business, and Ryan's annual fee accounted for over 42% of EDSI's gross income in the year the employees filed their complaint. 400 F.3d at 386. Thus, "[g]iven the symbiotic relationship between Ryan's and EDSI, Ryan's effectively determines the three pools of arbitrators, thereby rendering the arbitral forum fundamentally unfair to claimants who are applicants or employees." Id. The Sixth Circuit ultimately concluded that "EDSI's and Ryan's arbitration scheme does not allow for the effective vindication of Plaintiffs' FLSA claims." 400 F.3d at 388. The Sixth Circuit thus declined to enforce the arbitration agreements. Id.

In Geiger v. Ryan's Family Steak Houses, Inc., 134 F.Supp.2d 985 (S.D. Ind. 2001), the United States District Court for the Southern District of Indiana also had occasion to consider the arbitration agreement between EDSI and employees of Ryan's. In that case, plaintiff employees sued Ryan's under

Title VII of the Civil Rights Act of 1964. 134 F.Supp.2d at 988. As with Walker, the plaintiff employees' arbitration agreement with EDSI allowed EDSI to select the three pools of arbitrators, and the employer and employee would alternately strike names from the pools of arbitrators until only one name remained. 134 F.Supp.2d at 990-91. The district court held, "[T]here is a strong potential for bias in the selection of the arbitration panel." 134 F.Supp.2d at 995. This was because EDSI received payment from its agreements with Ryan's and "thus clearly has an incentive to maintain its contractual relationship with Ryan's . . . while applicants or employees . . . have no leverage. . . ." Id. Further, the court noted, "EDSI also retains full authority to select both the Rules for arbitration as well as the pools of potential arbitrators. Such power in the face of the potential for bias on the part of EDSI in favor of employers such as Ryan's renders it unlikely that applicants/employees will participate in an unbiased forum." Id. (footnote omitted).

McMullen, Walker, and Geiger all hold that courts may entertain pre-arbitration challenges to the arbitrator-selection process, because such claims are the exception to the general rule that challenges to arbitrator bias must await the completion of arbitration under 9 U.S.C. § 10. Further,

McMullen and Walker hold that the standard by which a court analyzes arbitrator-selection clauses is fundamental fairness.[6]

## B. The ICA's "Actual Bias" Holdings

The ICA initially properly analyzed the Nishimuras' case for fundamental fairness under McMullen and Walker.  133 Hawaiʻi at 228, 325 P.3d at 640.  The ICA then distinguished those two cases and held that the Nishimuras did not present facts showing that the arbitrator-selection clause in the HBLW was fundamentally unfair.  Id.  The ICA then proceeded, however, to hold, "In order to avoid enforcement of an allegedly unconscionable arbitration clause, Nishimura Plaintiffs were required to present evidence of actual partiality or bias of the arbitration service designated by PWC or the neutral arbitrator selected."  Id. (emphasis added).  Later in the opinion, the ICA also held, "Because Nishimura Plaintiffs failed to prove that the arbitration selection process would necessarily result in actual partiality or bias, the circuit court should have

---

[6]     We note that "fundamental fairness" in arbitration is a concept our appellate courts have already recognized.  In In re Arbitration between United Pub. Workers, AFSCME, Local 646, AFL-CIO & City & Cnty. of Honolulu, 119 Hawaiʻi 201, 210, 194 P.3d 1163, 1172 (App. 2008), the ICA quoted the Prefatory Note to the revised Uniform Arbitration Act (2000), the basis of HRS Chapter 658A, for the proposition that "arbitration is a consensual process in which autonomy of the parties who enter into arbitration agreements should be given primary consideration, so long as their agreements conform to notions of fundamental fairness. . . ." (Emphasis added).  See also Kay v. Kaiser Found. Health Plan, Inc., 119 Hawaiʻi 219, 229, 194 P.3d 1181, 1191 (App. 2008) ("Arbitrators wield great power over the scope and nature of the arbitration proceedings and all determinations of fact and law, with virtually no appellate review of their decisions.  The fundamental 'fairness' of these expansive powers must be grounded in the assurance that neutral arbitrators are indeed neutral. . . .") (Emphasis added).

21

confined judicial review to the fairness of the completed arbitration award, at which time 9 U.S.C. § 10 could provide for vacating the award upon a finding that the arbitrators acted with evident partiality."  133 Hawai'i at 229, 325 P.3d at 641 (emphasis added).

In support of this "actual bias" standard, the ICA cited to Doctor's Assocs., Inc., 85 F.3d 975.  Doctor's Assocs., Inc., however, did not involve a pre-arbitration challenge to the fundamental fairness of an arbitrator-selection provision. Rather, in that case, the defendants alleged that the arbitration service named in the arbitration agreement (American Arbitration Association or "AAA") "relies on [the plaintiffs] to provide it with repeat business and thus has a bias in favor of [that party]."  85 F.3d at 980.  The Second Circuit in that case rejected the argument, stating, "Defendants have failed to present any credible evidence indicating bias on the part of the AAA -- or its arbitrators -- in favor of [the plaintiffs] in this case, particularly because Defendants' claims have not yet gone to arbitration."  85 F.3d at 981 (citing 9 U.S.C. § 10(a)). Importantly, nowhere in the Doctor's Assocs., Inc. opinion does the "actual bias" standard appear.

Although not cited in the ICA's published opinion, it appears that the "actual bias" language comes from Phillips, 179 F.Supp.2d 840, which Gentry cited in its Opening Brief.

22

Phillips is also a case in which the fundamental fairness of an arbitrator-selection provision was not at issue. In that case, the arbitration agreement called for AAA to arbitrate the dispute. 179 F.Supp.2d at 843. The plaintiff in Phillips argued that "arbitration is inappropriate because the American Arbitration Association is biased in favor of the defendants," and analogized her case to the series of cases involving EDSI. 179 F.Supp.2d at 845. The United States District Court for the Northern District of Illinois rejected the argument, holding, "[The EDSI] cases are clearly distinguishable; in those cases, the defendants had ongoing service contracts with ESDI [sic] and paid ESDI [sic] to maintain an employment dispute resolution forum. Here, [the plaintiff] provides no evidence that the AAA, one of the country's leading non-for-profit dispute resolution organizations, is on defendants' payroll or any other evidence of actual bias on the part of the AAA." Id. (emphasis added).

In Phillips, only the bias of AAA was alleged, not the process by which AAA was selected as the arbitrator; nevertheless, the plaintiff and the district court analyzed the bias claim using the EDSI line of cases. While the financial interest linking EDSI to Ryan's in Walker and Geiger arguably demonstrates "actual bias," Phillips overstates the holding in those cases to conclude that only "actual bias" rendered the arbitrator-selection provisions fundamentally unfair.

23

"Actual bias" need not be proven in a pre-arbitration challenge to an arbitrator-selection provision, where, as in McMullen, the mere fact of one party's "exclusive control over the pool of potential arbitrators from which the arbitrator is selected" renders the arbitrator-selection process fundamentally unfair.  355 F.3d at 487, 494.  In other words, an arbitrator-selection provision "grant[ing] one party to the arbitration unilateral control over the pool of potential arbitrators" prevents arbitration "from being an effective substitute for a judicial forum because it inherently lacks neutrality."  355 F.3d at 494.

Further, contrary to Gentry's argument and the ICA's holding, the Nishimuras did not need to await PWC's selection of the arbitration service and arbitrator before challenging the enforceability of the HBLW's arbitrator-selection provision.  We note that in McMullen, the Sixth Circuit focused on the process of arbitrator selection, not any actual arbitrator or his or her alleged bias, even though an arbitrator had been selected in that case.  See 355 F.3d at 488.  Accordingly, the Sixth Circuit did not conclude that "actual bias" must be shown to render an arbitrator-selection process unfair; rather, the Sixth Circuit held, "When the process used to select the arbitrator is fundamentally unfair, . . . there is no need to present separate

evidence of bias or corruption in the particular arbitrator selected." 355 F.3d at 494 n.7.

In short, we adopt the "fundamental fairness" standard under McMullen to review pre-arbitration challenges to the arbitrator-selection process. There is no requirement for a party challenging the arbitration-selection process to show "separate evidence of bias," and, therefore, no requirement to show "actual bias" on the part of any particular arbitrator. Hence, the ICA erred in its holding that the Nishimuras needed to demonstrate "actual bias" in order to invalidate the HBLW's arbitrator-selection provision. 133 Hawai'i at 228-29, 325 P.3d at 640-41.

### C. Application of the "Fundamental Fairness" Standard to the Instant Case

The HBLW arbitration provision states, in relevant part, the following:

> VIII. Binding Arbitration Procedure
> Any disputes between YOU and US, or parties acting on OUR behalf, including PWC, related to or arising from this LIMITED WARRANTY, the design or construction of the HOME or the COMMON ELEMENTS or the sale of the HOME or transfer of title to the COMMON ELEMENTS will be resolved by binding arbitration. Binding arbitration shall be the sole remedy for resolving any and all disputes between YOU and US, or OUR representatives. . . .
>
> The arbitration shall be conducted by Construction Arbitration Services, Inc., or such other reputable arbitration service that PWC shall select, at its sole discretion, at the time the request for arbitration is submitted.

Ordinarily, an arbitration agreement is valid unless there is some basis to refuse to enforce it. 9 U.S.C. § 2. In this

case, PWC's identification with Gentry provides a basis for finding the arbitrator-selection provision unenforceable as fundamentally unfair. The plain language of the arbitration agreement shows that PWC acts on Gentry's behalf in administering the HBLW, which would include selecting an arbitration service, at PWC's "sole discretion," now that Construction Arbitration Services, Inc. is no longer available. As PWC acts on Gentry's behalf under the HBLW, the Nishimuras' concern that PWC's exercise of its sole discretion is akin to Gentry's exercise of such discretion is legitimate. As such, under McMullen, the HBLW's arbitrator-selection provision, which "grants one party to the arbitration unilateral control over the pool of potential arbitrators . . . prevents [arbitration under the parties' agreement] from being an effective substitute for a judicial forum because it inherently lacks neutrality"; therefore, the arbitrator-selection process is fundamentally unfair. 355 F.3d at 494, 494 n.7. Accordingly, the circuit court properly severed and struck the arbitrator-selection provision. Although the circuit court severed and struck the arbitrator-selection provision due to "potential conflict of interest," and not expressly due to "fundamental unfairness," we may "affirm a judgment of the lower court on any ground in the record that supports affirmance." Canalez v. Bob's Appliance

Serv. Ctr., Inc., 89 Hawai'i 292, 301, 972 P.2d 295, 304 (1999) (citations omitted).

> D.   **Fashioning Relief for an Unenforceable Arbitrator-Selection Provision**

We next address whether the circuit court had the authority under RCCH Rule 12.2 to order the parties to meet and confer to select a local arbitration service.  As Gentry points out, RCCH Rule 12.2(a) authorizes the circuit court to order non-binding arbitration, and the parties have agreed to binding arbitration under the HBLW:

> **Authority to order**. The court, sua sponte or upon motion by a party, may, in exercise of its discretion, order the parties to participate in a non-binding Alternative Dispute Resolution process (ADR or ADR process) subject to terms and conditions imposed by the court. ADR includes mediation, summary jury trial, neutral evaluation, non-binding arbitration, presentation to a focus group, or other such process the court determines may be helpful in encouraging an economic and fair resolution of all or any part of the disputes presented in the matter. . . .

(Emphasis added).  On the other hand, as the Nishimuras point out, the circuit court did not order the parties *into* binding arbitration under RCCH Rule 12.2 to settle the construction defect dispute.  Rather, the circuit court ordered the parties to meet and confer to select a local arbitration service, which constitutes such other "process the court determines may be helpful in encouraging an economic and fair resolution of all or any part of the disputes presented in the matter."  Thus, pursuant to RCCH Rule 12.2, the circuit court's action was appropriate.

27

Further, the circuit court's order provided, "If Plaintiffs and Gentry are unable to agree, the Court shall select a local arbitration service for this matter." This part of the order followed the Nishimuras' counsel's request to the circuit court: "If we cannot come to an agreement [about who we want to arbitrate this case], you select somebody." Whether or not RCCH Rule 12.2 applied, 9 U.S.C. § 5 provided authority for the circuit court to select an arbitrator in such a situation:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or <u>if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire</u>, or in filling a vacancy, <u>then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire</u>, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

Therefore, we affirm in toto the circuit court's order granting in part and denying in part Gentry's motion to compel arbitration, as well as its order denying Gentry's motion for reconsideration of that order.

## V. Conclusion

The ICA erred in requiring a party challenging an arbitrator-selection provision to show evidence of "actual bias." In resolving a challenge to an arbitrator-selection

28

provision, we apply the "fundamental fairness" standard articulated by the United States Court of Appeals for the Sixth Circuit.  In the instant case, we conclude that the arbitrator-selection provision is fundamentally unfair because it authorized one party's agent to exercise its sole discretion in selecting an arbitration service to hear a dispute between that party and the plaintiffs.  We therefore vacate the ICA's Judgment on Appeal, and affirm the circuit court's "Order Granting in Part and Denying in Part Defendant Gentry Homes, Ltd.'s Motion to Compel Arbitration Filed on August 29, 2012" and its "Order Denying Gentry Homes' Motion for Reconsideration of the Order Granting in Part and Denying in Part Gentry Homes, Ltd.'s Motion to Compel Arbitration [Filed August 29, 2012], Filed November 13, 2012."

| | |
|---|---|
| Melvin Y. Agena<br>for petitioners | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Ryan H. Engle<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |